## Dumas *vs.* The State of Georgia.

1. The nephew of a county commissioner is not a competent juror, if the uncle has taken part officially in promoting the prosecution, by voting county funds to pay a reward for the prisoner's apprehension, by aiding to employ counsel to prosecute, and by aiding in the preparation of the case, the indictment being a special presentment of the grand jury. The uncle is to be considered as a volunteer prosecutor, no law requiring him to perform that function as a county commissioner.

2. That declarations offered in evidence as dying declarations were made under the belief that the wound was mortal and death impending, may be inferred from the nature of the wound, and other circumstances, though nothing direct was said respecting death or danger. The court must judge of the preliminary evidence, in the

first instance, and deeming it *prima facie* sufficient, should admit the declarations to the jury, instructing the jury afterwards to pass finally for themselves on the question, whether or not the declarations were conscious utterances in the apprehension and immediate prospect of death.

3. The prisoner's admission in open court, made as a part of his statement on the trial, that he was present at the homicide, is direct evidence that he was present, and the circumstance of his presence need not be otherwise established.

4. Though to warrant a conviction for murder, the evidence must not leave the venue of the crime doubtful, the requisite certainty may be attained by circumstantial as well as by direct evidence. And such certainty is attained when the testimony shows that the mortal wound was given whilst the deceased was passing upon a wagon-road between two points, some eight miles apart, both in the same county, and that he left the one point late in the afternoon and arrived at the other during the early part of the night; there being no testimony tending to show that the road along which he traveled crossed the county line, or that he left the county, entered another, received the wound in the latter, and then returned to the former.

5. When two persons are charged in the same indictment with the offense of murder by shooting, (both as principals in the first degree,) the conviction of one is no obstacle to a subsequent conviction of the other; nor does the guilt of one render the guilt of the other in equal degree impossible, though only a single shot was fired. If both were present in pursuance of a conspiracy to murder, or in the prosecution of a common felonious intent, and one of them shot in behalf of both, and with the sanction and in the immediate presence of his fellow, the shooting was not the act of one only, but the act of each.

6. The evidence of the prisoner's actual participation in the criminal transaction being wholly circumstantial, and the court having committed an error in pronouncing one of the jurors competent, and the prisoner being under sentence of death, a new trial is directed.

Criminal law.   Jury.   Evidence.   Venue.   Before Judge HALL.   Pike Superior Court.   April Term, 1878

Dumas was placed on trial for the murder of Ballard alleged to have been committed on the 1st of November, 1877. He pleaded not guilty. The indictment also charged one Childs with the same offense.

The evidence made, in substance, the following case :

On the afternoon of October 30, Dumas and Childs were seen in Barnesville in company with each other. They re-remained there until the afternoon of November 2d, most of the time about a bar-room, doing nothing in particular, and making weak efforts to obtain work. On the afternoon above mentioned, Ballard paid a bill in the bar-room, and in doing so pulled out a roll of money which these men probably saw. They bought some cartridges for a pistol, and a pack of cards. The defendant went out of Barnesville, on the same evening with Ballard, in his wagon. Childs, or some one greatly resembling him, was seen on the road from Barnesville to Zebulon, some distance from the former place, waiting at a branch. This was the road being traversed by the wagon containing Ballard and defendant, at a point not yet reached by them.

At about seven o'clock of the same evening, Ballard entered the house of one Jerry Leak, took a chair and sat down by the fire. He had been shot in the back of the head. After remaining thus for a few minutes he raised his hands to his forehead and said his skull was about to burst open. He then commenced leaning over in the chair, when Leak laid him down on a pallet. He was in the chair about fifteen minutes. He spoke while sitting up, but not after he began to lean over. He died the next morning. He lived about two miles from Leak's house.

Here it was proposed to put in evidence the declarations of the deceased as to who shot him, etc. Defendant's counsel objected upon the ground that it had not been shown that deceased, at the time of making the declarations, was conscious that he was in *articulo mortis*. The court admitted the evidence, stating that it would give to the jury proper instructions about weighing and considering it.

Whilst seated in the chair he stated to Leak that two darkies shot him ; that they got in the wagon, rode some distance with him, shot him and jumped out. His wagon was

standing at Leak's gate. He was shot on the road from Barnesville to Zebulon, between four and five miles from the former place. Barnesville and Zebulon were both in Pike county, as was also the house in which deceased died. This house was some two hundred yards from where he was shot. But one shot was heard. The person of deceased was not robbed. Forty-seven dollars were found on his body. The defendant, in his statement, admitted being present at the shooting, but asserted that Childs fired the fatal shot without any connivance on his part. He and Childs were seen in Barnesville together after the homicide, during the same night. The former left after the sun was up.

Much evidence was introduced as to the size of the bullet used, the cartridges purchased, the track made, etc., not material here.

The jury found the defendant guilty. He moved for a new trial upon the following grounds :

1. Because the court erred in overruling the objection to the testimony of Leak, so far as it covered the declarations of the deceased as to who shot him, etc.

2. Because the court erred in declaring Lester, one of the jurors put upon defendant, competent, when it was admitted that he was a nephew of Barrett, who, though not on the indictment as prosecutor, had, as county commissioner, voted and concurred in the appropriation of county funds to pay a reward for the apprehension of defendant, and also aided in employing counsel to prosecute, and in the preparation of the prosecution.

As to this ground, the judge certified that the juror swore he did not know Barrett had taken any interest in the matter. Also, that the only interest which the evidence disclosed that Barrett had taken was in his official capacity as county commissioner.

3. Because the court erred in charging as follows : "The state must establish the place of venue, and fix the place where the crime was committed, as well as the fact that the

crime was committed.   The state must establish the venue beyond all reasonable doubt, as well as show the killing beyond all reasonable doubt.   It is not necessary that the fact be established by direct evidence, *it may be established by circumstantial evidence.*"

4th.  Because the court erred in charging that "when I said the killing, I don't mean the place where the deceased died. If the place where he died is in the same county as the place where he received the injury of which he died, then the proof of the place where he died is sufficient to establish the fact."

5th.  Because the court erred in charging that " the state has offered to give in evidence the dying declaration of Ballard, and I have allowed that statement by witness to be made to you as to the alleged dying declarations.   Though I have allowed the proof to go to you, it is for you to determine whether you will receive it and treat it as evidence or reject it.   If the court is satisfied *prima facie* that the deceased is in *extremis* and conscious of his condition, it will allow the dying declarations to go to the jury.   The jury will look to the evidence to see if the person making them was in *extremis* at the time, and was conscious of his condition.   If the jury believe the fact that the person was in *extremis*, and conscious of his condition, then they may consider the dying declarations as evidence."

6th.  Because the court erred in charging that "the fact of consciousness of his condition may be shown by circumstances or by expressions made by deceased himself.   You can take one or the other, or both together, and determine whether he was in *extremis* at the time the alleged declarations were made."

7th.  Because the court erred in charging as follows: " Confessions may be direct or circumstantial evidence.   If the defendant has admitted in open court that he was present at the time Ballard was killed, then such admission or confession would be direct evidence of his being present, but the fact that he may have been present would not be

sufficient to authorize you to convict, for before you can convict you must be satisfied beyond a reasonable doubt that he was not only present at the time Ballard was killed, but that he was one of the perpetrators of the offense—one of the principal actors in the commission of the offense."

8th. Because the court erred in charging that "the defendant is indicted as principal in the first degree. Before you can convict for this offense, you must believe that the defendant was one of the actors or perpetrators of the crime, or that a conspiracy was formed by himself and another to take the life of Ballard, and he was present and in some way participating in the act, or assisting another in doing it, when another has already been tried and convicted under the same indictment as the actual perpetrator of the offense charged."

9th. Because the jury found contrary to the charge of the court as set out in the preceding ground.

10th. Because the court erred in ruling that the defendant could be tried and convicted under this bill of indictment, when Childs had been put on trial and found guilty of being the actual perpetrator of the crime charged in said indictment.

The motion was overruled, and defendant excepted.

FRANK L. HARALSON, for plaintiff in error, cited as follows: On venue, 56 *Ga.*, 36; 48 *Ib.*, 43; 6 Yerg., 367; 11 *Ga.*, 315; 34 *Ib.*, 78. On dying declarations, Code, §3781; 1st Phil. on Ev., 235; 1 Car. & P., 108; 4 Har., 562; 11 *Ga.*, 353; 1 East, 358; 12 Ala., 764; 24 *Ga.*, 297; 41 *Ib.*, 484; 43 *Ib.*, 239; 2 Haywood, 31. Courts not take judicial notice of particular places in state, and distances, Code, §3751; Sharswood's Notes to Stark. Ev., §§58, 650; 8 Car. & P., 436; 4 B. & Ald., 243; 2 Q. B., 789; 2 L'd. Ray., 1379; 42 E. C. L., 915; 6 *Ib.*, 243. On competency of juror, 3 Black. Com., 363; Coke Lit., 157, §28; 28 *Ga.*, 439; 33 *Ib.*, 407; 1 Arch. Crim. Pro., 511.

R. N. ELY, attorney general; F. D. DISMUKE, solicitor

general; J. A. HUNT, for the state. Dying declarations, 11 *Ga.*, 353; Code, §3781; 1 Phil. on Ev., 237.

BLECKLEY, Justice.

The court committed only one error in the progress of the trial, and that was in pronouncing Lester a competent juror. We think he was incompetent by reason of his relationship to his uncle Barrett, who had been active in promoting the apprehension and prosecution of the accused. It was not the official duty of the uncle so to act by virtue of his station as a county commissioner. He must, we think, be treated as a volunteer prosecutor, and as having committed himself personally and in his private capacity to the side of the prosecution. If by his co-operation any of the county revenue was expended in a reward, we do not see why he cannot be legally coerced to refund it. As a county commissioner he had no authority to devote the public money to such an object. But whether money was expended or not, he seems to have taken the position of an active prosecutor, and we think it makes no difference that his name was not marked on the presentment or indictment. Nor does it make any difference that the nephew declared on oath his ignorance of his uncle's participation in the proceedings against the accused. We understand this declaration to have been made whilst his competency was under investigation. Up to that time he was ignorant, but we can see no reason to think that he remained so. As he was present when the matter was examined in open court, there is every probability that he became enlightened by the same means which enlightened the court. When adjudged competent as a juror, he most probably knew which side his uncle had taken, and how his interest against the accused had been manifested. In nothing which we have said do we intend to discourage any citizen from prosecuting, or aiding to prosecute, in this or any other case. Such a service is often invaluable to the public welfare and

the cause of justice. So far from being reprehensible, it is highly meritorious. But it is our duty to say, and to hold, that the active prosecutor of an offender is incompetent to try him as a juror, and so are his near relations. The head-notes and the reporter's statement being so full, it is unnecessary to add more.

Judgment reversed.