## MERRITT *v.* THE STATE.

1. On the trial of one indicted for the offense of assault with intent to rape, when the father of the alleged victim, as a witness for the State, had testified to facts tending to show he had discovered and intercepted the defendant while making such assault upon his daughter, any subsequent conduct of the father in reference to a prosecution of the case, which may be fairly construed as inconsistent with the truth of his testimony, is admissible in evidence in behalf of the defendant. It was therefore error in this case for the court to reject testimony offered by the defendant, showing that he was arrested under a warrant sworn out, the day following the alleged crime, not by the father but by the uncle of the girl alleged to have been assaulted.

2. Sayings of the father in such a case, made to the defendant and his alleged victim at the time of or directly after the commission of the alleged crime, are admissible in evidence as part of the res gestæ of the transaction; but any subsequent declarations of his, not made at such a time and place as to constitute a part of the res gestæ, can not be admitted in evidence for the purpose of impeaching him as a witness, without the proper foundation being first laid therefor as required by statute.

3. When the character of the female alleged to have been assaulted is in issue before the jury, it is not error to exclude testimony offered by the defendant from his own witness as to what such witness had testified about her character on the committal trial, no foundation being laid by the defendant for the impeachment of his witness.

4. In charging upon expert testimony of physicians introduced in behalf of the State upon a material question of fact at issue, it is error for the court, after charging the jury that such testimony is dependent upon the degree of the experience and honesty and impartiality of the witnesses who testified, to further instruct them that "where such elements are undoubted their testimony is entitled to great weight and consideration."

Argued March 6, — Decided March 15, 1899.

Indictment for assault with intent to rape. Before Judge Harris. Carroll superior court. October term, 1898.

*Reese & Gordon*, for plaintiff in error.

*T. A. Atkinson*, solicitor-general, by *W. Y. Atkinson*, contra.

LEWIS, J. Virgil Merritt was placed on trial in the superior court of Carroll county, on an indictment charging him and Avery Merritt with the offense of assault with intent to rape. The defendant was found guilty, and excepts to the judgment overruling his motion for new trial. It appears from the record that Mary White, the female alleged to have been assaulted, was about twenty years of age. Among the witnesses introduced by the State was her father. His testimony tended to show that he entered his house about three o'clock on the afternoon of a certain day, and discovered the defendant making the criminal assault upon his daughter, both of them lying upon the bed, he having his hand upon her throat, and that the presence of the father prevented further assault by the defendant. It appeared further that the defendant remained there in the house for some time with the father, and no steps were taken to apprehend him on that day, the father giving as his reason for not taking any violent action in the matter that he was unarmed and the defendant was armed with a pistol; but no reason appears why a warrant was not promptly sworn out. On the following day a warrant was sworn out by the uncle of the girl, charging this defendant and his brother, Avery Merritt, with the offense of assault with intent to rape. This warrant was offered in evidence by the defendant, and one ground in the motion for new trial is that the court committed error in excluding it. Under the peculiar facts and circumstances of this case, we think the court erred in not admitting this warrant in evidence. The facts insisted on for the conviction of

this defendant presented an attempt to commit a most horrible outrage upon the daughter of a witness who had been introduced in behalf of the State, who appeared as prosecutor on the indictment, and whose testimony indicated that he had overtaken the defendant in the perpetration of the crime charged. Any conduct of such witness either at the time of or subsequent to the alleged offense, which might be fairly construed as inconsistent with the truth of his testimony, should have been admitted to the jury as affecting his credibility. This evidence was not in the nature of sayings or statements made by the witness contradictory to his testimony on the stand; and hence it did not require any preliminary examination of the witness in order to lay the foundation for its introduction. The evident purpose of the testimony was to throw light upon the probability of the truth of the witness's statement before the jury.

Ordinarily in a criminal case it is no doubt true that the bare fact as to who swore out a warrant, or when it was sworn out, against the defendant, would be immaterial; but who can say, under the circumstances of this case, that if the father took no steps for the immediate apprehension of a criminal who had committed an outrage upon the sanctity of his home and the honor of a member of his household, suffered a delay of the matter until the following day, during which time the alleged criminal was at liberty, and even then did not appear upon the warrant as his prosecutor, it would not be a circumstance that a jury should consider in weighing the truth of his sworn statement on the trial and the degree of credit that it should receive? We do not mean to intimate what weight this evidence offered by the defendant and excluded by the court should have before the jury. Such conduct on the part of the prosecutor and father may be open to such explanation as would be satisfactory to the jury, but of all this the jury themselves would be the judge. As argued by Nisbet, J., in delivering the opinion of the court in the case of *Camp* v. *State*, 3 *Ga.* 420, 421, on account of the peculiar nature of this crime of rape; on account of the fact, as Lord Hale puts it, "that this accusation is easily made, hard to be proved, and harder to be defended by the party accused, notwithstanding his innocence," the defend-

ant "is let in, in his defence, to some privileges which are not always allowed to persons accused of crime." Of course the established rules of law on admissibility of evidence must be observed in the trial of all cases; but on account of the peculiar nature of this crime, some circumstances might be admissible as having a tendency to throw light upon the truth of the case which might be entirely immaterial were the issue different.

2. Another ground of the motion for new trial is, that the court erred in refusing to allow defendant's counsel to elicit from his witness Avery Merritt an answer to the following question: "What, now, did John White right there say to Virgil?" The answer to this question would have been, "John White said to Virgil, 'You are a dead man.' Virgil replied, 'No, I reckon not.' Then John White said to Virgil, 'You and Mary ought not to act that way.'" John White was the father of Mary. He related while on the stand what was said and done by him, his daughter, and the defendant, at the time and immediately after the latter was detected making the assault. It does not clearly appear from the record when the above conversation sought to be introduced by the defendant occurred, but we think it is fairly inferable from the question asked, the answer given, and from other testimony that appears in the record, that it occurred at such a time and place as to form a part of the res gestæ of the transaction; and if so, it was clearly admissible. The ground in the motion, however, is defective, in that it does not more specifically set forth the time, place, and circumstances under which the particular conversation occurred; and for this reason, if this were the only ground of error complained of, we can not say that we would be justified in reversing the judgment overruling the motion for new trial. If the conversation offered in evidence was so far removed from the particular transaction under investigation as not to constitute a part of the res gestæ, but was offered for the purpose of impeaching the witness, then the foundation for such impeaching testimony should have been first laid by specifically calling the witness's attention to the matter, as required by the Civil Code, § 5292.

3. It appears from the record that defendant's counsel in-

troduced a witness with a view of proving the bad or dissolute character of the female alleged to have been assaulted. In the course of the examination he enquired of the witness as to what the witness had stated with reference to her conduct or character, in the committal trial. This was objected to, and was excluded by the court after the statement of defendant's counsel that the object of the testimony was simply to show her character, based upon what he had said on the former trial, and that the object was to show improper conduct which he saw between the girl and the man on a certain occasion. It did not appear that counsel had been entrapped by the witness, and the testimony offered was manifestly inadmissible; for he sought to show such character, not by the testimony of the witness from the stand, but simply by what he had previously sworn to.

4. The character for virtue and chastity of Mary White was put in issue before the jury. There was testimony tending to show that she was, and had been previously to the alleged assault upon her, a girl of loose and rather dissolute habits; and there was evidence from which it might have reasonably been inferred that she had before been guilty of illicit intercourse with the defendant, if not with other persons. It seems that before and pending the trial she had submitted to an examination by certain physicians, who had given it as their opinion that she was a virgin and had never had any sexual intercourse with a man. On the cross-examination of these witnesses there was developed some conflict between the opinion of some of them and medical authority upon the subject. Exception is taken in the motion for new trial to the following charge of the court: "Evidence of certain physicians has been admitted, which was offered for the purpose, as you understand, of showing she" (meaning Miss White) "was a virtuous woman. The law makes the opinion of experts — as they are called experts on any question of science — makes that sort of evidence admissible. The value of that testimony, gentlemen, is dependent upon the degree of the experience and honesty and the impartiality of the witnesses who testified, and its weight varies in proportion as they are experienced, honest, and impartial.

Where these elements are undoubted, their testimony is entitled to great weight and consideration; but, gentlemen, it is not so binding, not so authoritative that you, the jury, are bound by it. It is intended to aid you in coming to a correct conclusion." The point of objection to the charge was, that the court committed error in saying that such testimony was entitled to great weight under the law. The charge of the court complained of is evidently based upon a decision of this court in *Choice* v. *State,* 31 *Ga.* 425, the principle laid down in the fourteenth headnote of that case being substantially embodied in the charge above quoted. It will be seen, however, from that case, that this court did not decide it was proper for the judge to give the view therein announced in charge to the jury in any particular case. That question was not involved. Judge Lumpkin, in delivering the opinion in that case, on page 466, does not even seem to think that any greater weight should be attached to the opinion of physicians, based upon facts, than the opinion of practical men based upon observation, conduct, etc. He says: "As for myself, I would rely as implicitly upon the opinion of practical men, who formed their belief from their observation of the appearance, conduct, and conversation of a person, as I would upon the opinions of physicians who testified from facts proven by others, or the opinions even of the keepers of insane hospitals." But while this was the opinion of a learned jurist, however sound in the judgment of any court it may be considered, it would have been manifestly improper to give it in charge to the jury. We think it would have been equally as improper to give in charge to the jury the principle announced in the fourteenth headnote of that case.

Ordinarily a court should not instruct the jury what particular testimony before them is, or is not, entitled to great weight or consideration, especially where there is no statute or rule of law stating that the particular testimony in question should be considered by the jury as being of great weight. In this connection see the views of this court, expressed in the opinion delivered at the present term in the case of *Raleigh & Gaston R. R. Co.* v. *Allen,* 106 *Ga.* 572. We think the decision in the

case of *Ryder* v. *State*, 100 *Ga.* 529 (6th headnote), and 533, is directly applicable to this question. There it appeared that expert and non-expert testimony had been delivered in refer-ence to the sanity of the defendant; and it was held that it was error to charge that the testimony of expert witnesses was entitled to great weight, and to add that the same was true with parties who associated with the defendant, etc. Justice Cobb says, in his opinion in that case: "It may be that in certain cases the testimony of non-expert witnesses would, in the mind of an intelligent juror, outweigh the testimony of the alleged expert witnesses, and that in other cases the testimony of the expert would be given the greater weight; but the jury are the sole judges of such things, and the judge should leave them un-trammelled to pass upon the credibility of all witnesses, and give such weight to the testimony of each as they see proper." So in the case under consideration, the jury might have consid-ered that the facts testified to by other witnesses deserved greater weight, as tending to show the want of virtue and chastity in the female whose conduct in this particular was under investi-gation, than the bare opinion of experts, founded upon a phys-ical examination. As to what weight they should give testi-mony on either side was purely a question for the jury; and in a close case as this was, on this particular issue we think it was manifestly error to have called the jury's special attention to the class of testimony on either side, and to have instructed them that such testimony should be given great weight and consideration.

As a new trial is granted in this case, we purposely refrain from expressing or intimating any opinion as to the weight or sufficiency of the evidence to sustain the verdict; except to say that the contest over the material issues of fact in the case was of such a close nature as to require a new trial, on account of the errors of law committed in the charges and rulings of the court hereinbefore indicated.

*Judgment reversed. All the Justices concurring.*