TATUM *v.* THE STATE.

No. 16789. NOVEMBER 16, 1949.

*John S. Wood, D. Carl Tallant* and *Herman J. Spence,* for plaintiff in error.

*Eugene Cook, Attorney-General, James T. Manning, Solicitor-General, William A. Ingram,* and *Rubye G. Jackson,* contra.

ALMAND, Justice. At the April term, 1949, of the Superior Court of Pickens County, Bryan Tatum and Weldon Sullivan were jointly indicted for the murder of Grady Earl Holbert. They were jointly tried, and a verdict of guilty without a recommendation was returned on April 7, whereupon they were sentenced to be electrocuted. Tatum filed a motion for a new trial based on the usual general grounds, and by amendment nine special grounds were added. The motion as amended was overruled, and he excepted.

■ It appears from ground 2 of the amendment to the motion for new trial that, when the case was called, the solicitor-general produced four petitions, or lists of names, labeled respectively exhibits 1, 2, 3, and 4, containing altogether 116 names in writing, showing opposite each name the amount contributed by such person. There was typed on each of the lists numbered 2, 3, and 4, the following: "We, the undersigned, hereby contribute the amount opposite our names to the family of Garland Holbert, who had the misfortune of having their son and brother, Earl Holbert, brutally murdered on the 22nd day of February, 1949." The list or petition numbered 1 contained the names of six persons. In addition to the names, there also appeared on this list the words, "A Friend," five times; the words, "A Friend to All," one time; and the word "Cash," one time; there being written opposite each such designation an amount of money. On such list was typed: "We, the undersigned, hereby contribute the amounts opposite our names, for the purpose of employing special counsel to assist the solicitor-general in prosecuting the defendants charged with the murder of Earl Holbert."

Among the contributors and the amounts contributed, as shown by lists 2 and 3, were Hubert Godfrey, one dollar, and Dick Godfrey, fifty cents. In the view we take of the case, it is unnecessary to set out further the contents of these four lists.

Special ground 2 assigned as error the court's refusal to "purge the jury as to the relationship of such jurors to certain persons whose names appeared on certain petitions labeled officially by the court reporter as numbers 2, 3, and 4, which said petitions or lists showed the names of certain contributors of money to the family of the deceased and the amount of the contributions made, and which said petitions were produced by State's counsel when movant's case was called for trial."

It appears from this ground of the motion that the trial judge, in refusing to purge the jury in accordance with the above, stated: "The motion is overruled. And the court holds that, under the evidence of Mr. Holbert [father of the deceased], these contributions in the exhibits 2, 3, and 4, were not contributors for the prosecution of defendants on trial. And the court holds further that those contributing on exhibit 1 are contributors to the prosecution, and that they or their relatives would be disqualified to serve on the jury."

The brief of counsel for the plaintiff in error, after quoting the above, states: "The court proceeded to purge the jury for relationship to the defendants, the deceased, to those persons whose names appeared on the list labeled 'Exhibit No. One,' which was the list of contributions for 'special counsel to prosecute murder cases.' The court inquired particularly as to relationship to" named persons, including all those whose names appeared on list No. 1.

The only evidence as to the contributions shown on lists 2, 3, and 4, was the testimony of Garland Holbert, father of the deceased. His testimony was direct and positive that the contributions on these three lists were made solely by friends of the deceased for aiding his family, and that the collections under these three lists were turned over to him and he placed the money in the bank, and that he did not use "one dime of that money in connection with the prosecution." There was no evidence before the trial judge that any person whose name appeared on lists 2, 3, or 4 had contributed money other than for the purpose which appeared at the head of the list, to wit, "to the family of Garland Holbert." The movant at the time the motion to purge was made did not submit any proof that any of the persons whose names appeared on lists 2, 3, and 4 had made contributions for the purpose of employing special counsel. The judge therefore did not err in overruling the motion to purge the jury as to relationship to the persons named on lists 2, 3, and 4.

■ Ground 3 charges that Elbert Clark, one of the jurors who served on the case, was a nephew of D. L. Holmes, who, as shown by list 1, had contributed the sum of $5 "for the purpose of employing special counsel to assist the solicitor-general" in prosecuting the defendant, and thereby the said Clark was disqualified to serve as a juror. This ground is properly supported by proof of lack of knowledge of such relationship at the time of the trial on the part of the defendant and his counsel.

When this case was called for trial, the State produced a petition entitled, "Contributions for special counsel to prosecute murder cases," which showed the names of the persons who had made contributions to the father of the deceased and the amounts contributed. Above these names appeared the following: "We the undersigned hereby contribute the amount opposite our names for the purpose of employing special counsel

to assist the solicitor-general in prosecuting the defendants charged with the murder of Earl Holbert." On this list was the name of D. L. Holmes with a contribution of $5. Upon motion of counsel for the defendant, the trial judge made the following ruling: "The court holds further that those contributing on exhibit one are contributors to the prosecution, and they or their relatives would be disqualified to serve on the jury." The court thereupon endeavored to purge all tentative jurors who were related within the sixth degree to those persons whose names appeared on list number one. Apparently neither the juror Clark nor any one else disclosed that Clark was related within the prohibited degree to Holmes, nor was any issue raised before the trial judge at the time he purged the jury that Holmes had contributed to help the family of the deceased, and not to employ special counsel.

The trial judge made a positive ruling that all jurors who were related within the prohibited degree to any person whose name appeared on list number one were disqualified to serve on the jury trying the defendant. Under that ruling, Elbert Clark was disqualified propter affectum. The fact of disqualification being shown, the presumption arose that he was not a fair and impartial juror. Such presumption was not overcome or rebutted by the affidavit of D. L. Holmes, made after the trial, that he, Holmes, had made a contribution for the assistance of the family of the deceased and not to employ special counsel. The law presumes that both Clark and Holmes knew of the relationship. The fact of contribution and the purpose thereof were shown, and the court ruled as a matter of law that all jurors occupying the status of Clark were disqualified to serve. To permit a juror to serve under such circumstances, is a denial to the defendant of his constitutional right to be tried by a jury composed of twelve men each of whom is unbiased and impartial. As was said in *Georgia Railroad* v. *Cole*, 73 *Ga.* 713, 715: "A jury composed of men who are not lawful men—men whose relationship to the parties renders them incompetent as jurors, cannot render a lawful verdict. . . It cannot be said that the defendants in error have had their case tried; certainly not legally, and, although the verdict may be in accordance with the facts, and such as a lawful jury should have rendered, yet it is no verdict, and the court did right to set it aside."

We pass next to grounds 5 and 7 of the amendment to the motion. Ground 5 alleged the disqualification of W. T. Quinton, one of the jurors, because he was a first cousin of the wife of Hubert Godfrey, who, as alleged, made a contribution of money to the father of the deceased "for the purpose of employing an attorney to assist in the prosecution of movant for the alleged murder of" the deceased. Ground 7 alleged disqualification of the same juror, W. T. Quinton, because he was a first cousin to Dick Godfrey, who made a contribution of money to the father of the deceased for the same purpose, as alleged in ground 5.

Attached to these grounds were affidavits of Hubert Godfrey and Dick Godfrey, verifying the relationship alleged to the named juror, and stating that each affiant "made a contribution to the father of Earl Holbert for the purpose of employing an attorney to assist in the prosecution of the above defendants, who did appear and assist in the prosecution of said case."

There is no merit in the contention made in the brief of the attorney-general that these grounds are incomplete because not supported by affidavits as to the residence, names of associates, means of knowledge, character, and credibility of the affiants. *Davis* v. *State*, 150 *Ga.* 19 (1) (102 S. E. 445).

The State made no specific or direct counter-showing in opposition to the affidavits of Hubert Godfrey and Dick Godfrey, just described, unless the affidavit of Garland Holbert, father of the deceased, be so considered. He swore that, as the father of the deceased, he employed Honorable William A. Ingram to assist the solicitor-general in prosecuting the defendants for murder; that at the time of the trial he had not paid said special counsel anything, but has now paid him in full for all services; that such payment has been made entirely from his own personal funds; and that no funds contributed to him by friends and citizens generally were used for the purpose of paying counsel or in any other manner in the prosecution of the defendants.

At the time it was sought to purge the prospective jury of all persons who were related within the prohibited degree to those on lists 1, 2, 3, and 4, who had made contributions for the employment of special counsel, Garland Holbert testified that he did not have any money of his own in the bank, and that what money was in the bank had been contributed by persons shown

on lists 1, 2, 3, and 4. He testified that he did not expect to pay Mr. Ingram anything; and as to whether or not Mr. Ingram voluntarily prosecuted the case, he testified: "I says I will have the money when court is over, and I says I have got it now. Yes, sir, I expect to pay him when court is over." He further testified that the list of contributions for special counsel was turned over to him subsequently to the time of the contributions set out in lists 2, 3, and 4.

It thus appears from the undisputed evidence before the trial judge that Hubert Godfrey, whose wife was a first cousin of W. T. Quinton, a juror, made a financial contribution to the father of the deceased, "for the purpose of employing an attorney to assist in the prosecution of the above defendants, who did appear and assist in the prosecution of said case"; also, that Dick Godfrey, a second cousin of W. T. Quinton, made such a contribution. There is no denial in the evidence that Garland Holbert did receive this money, and that he, Garland Holbert, did employ an attorney, who appeared and assisted the State in the prosecution of this case. Though Garland Holbert testified at the time of the trial that he had not paid special counsel anything to assist in the prosecution, and that after the trial he paid Mr. Ingram for his services out of his own funds, we do not think that it makes any difference whether the contributions of Hubert Godfrey and Dick Godfrey were actually paid to special counsel or not. These contributions were made specifically for the purpose of assisting the father of the deceased in employing special counsel, who was employed and did assist in the prosecution. Such contributions were received by the father and never returned. The contributors intended by their contributions to assist in the prosecution of the defendants, and they thereby became volunteer prosecutors; and the fact that the father retained these particular contributions and paid the special counsel out of other funds did not thereby render the contributors, Hubert Godfrey and Dick Godfrey, strangers to the prosecution.

A juror in a criminal case who is related, by blood or marriage, within the sixth degree to the prosecutor, ascertained according to the rules of the civil law, is a disqualified juror; and such disqualification of a juror, which was unknown to the defendant or his counsel until after verdict, or which could not have

been ascertained by either of them before verdict by the exercise of due diligence, is cause for a new trial. *O'Berry* v. *State,* 153 *Ga.* 644 (1) (113 S. E. 2); *Etheridge* v. *State,* 163 *Ga.* 186 (1) (136 S. E. 72); Ga. L. 1935, p. 396 (Code, Ann., § 59-716). Where one contributes to a fund to be used in employing an attorney to aid the solicitor-general in the prosecution of a particular person for an alleged offense with which he is charged, and the attorney renders such aid upon the trial of the case, the person so contributing is to be considered as a volunteer prosecutor. *Lyens* v. *State,* 133 *Ga.* 587 (4) (66 S. E. 792); *O'Berry* v. *State,* supra (4). See also *Dumas* v. *State,* 62 *Ga.* 58 (1).

The purpose of the law in disqualifying jurors who are related within the prohibited degree to prosecutors, volunteer or otherwise, is to guarantee to a defendant an impartial and unbiased jury. The test to be applied, in determining whether one becomes a volunteer prosecutor by contributing money for the employment of special counsel to assist the State, is not whether the money contributed was actually used in the prosecution, but whether in fact, if a contribution was made for the specific purpose of employing counsel, such counsel was employed and assisted in the prosecution of the case. We therefore hold that the juror W. T. Quinton, a first cousin of the wife of Hubert Godfrey, and a second cousin of Dick Godfrey, was disqualified, and the court erred in holding to the contrary.

It is contended by counsel for the State that the juror Quinton was not disqualified, for the reason that it did not appear that the contributions made by Hubert Godfrey and Dick Godfrey were in fact used to employ an attorney, and counsel cite in support of this contention *Mills* v. *State,* 193 *Ga.* 139 (17 S. E. 2d, 719). In that case, error was assigned on the ground that one Sikes, a juror in the trial of the case, was related within the prohibited degree to one W. H. Hodges, who had contributed money to a fund raised for the purpose of employing an attorney to aid in the prosecution of the case; and that an attorney was employed and aided in the prosecution. The only evidence in support of this ground was an affidavit of Hodges, in which he swore that, "when a collection was being taken . . to raise funds to pay an attorney to aid in the prosecution of said case, deponent donated the sum of fifty cents." This court held that

the affidavit of Hodges failed to show to whom the money was paid, and failed to show that the sum was in fact used to employ an attorney; and that the affidavit was merely opinionative and hearsay as to the purpose for which the collection was being taken. It was held that, in such a case, "it is not enough to show interest by such person, but it must appear as a matter of fact that the person became a volunteer prosecutor by use of his contribution to employ an attorney. Unless there was such use, the attorney would not become the agent or representative of the person, so as to render the latter a volunteer prosecutor." We have examined the original record in that case, and find that there was no evidence in support of the ground to show to whom Hodges made the contribution, or that the attorney who was employed to aid the solicitor-general was employed by any one having any connection with the collection of the fund to employ an attorney to aid in the prosecution. It is our opinion that it was unnecessary to hold that, to constitute Hodges a volunteer prosecutor, it must appear that his specific donation was in fact used for the purpose of employing special counsel, and that the statement in the opinion, that "it must appear as a matter of fact that the person became a volunteer prosecutor by use of his contribution to employ an attorney," was obiter. However, such statement is not in accord with previous rulings of this court. In *Dumas* v. *State,* 62 *Ga.* 58, it was sought to disqualify a juror on the ground that the juror's uncle, a county commissioner, had voted to appropriate county funds to pay a reward for the apprehension of the defendant, and also aid in employing counsel to prosecute and aid in preparation of the prosecution. The evidence before the trial judge on this question was that the uncle, as county commissioner, had voted county funds for this purpose. This court held that the uncle became a volunteer prosecutor by his voting for the appropriation of the money for the purpose of the prosecution; and that it made no difference whether the money was actually expended or not for that purpose, holding that the uncle had taken the position of an active prosecutor, and that it made no difference whether his name was marked on the presentment or indictment. This ruling was by a unanimous court. The ruling in *Lyens* v. *State,* supra, though not by a unanimous court, was followed and approved by a

unanimous decision in *O'Berry* v. *State*, supra. In the *Lyens* case, one of the grounds of the motion for new trial contended that a juror by the name of Fields was a second cousin by marriage to two persons contributing to the employment of a special attorney to prosecute the defendants, who did under such employment appear and prosecute the defendants on the trial. One of the contributors testified by affidavit that he had contributed $5 towards a fund to employ counsel to prosecute the defendant; "that he had nothing to do with the employment of counsel and did not select or employ any one, but merely contributed to the fund to be used for that purpose." This court held that Fields was disqualified as a juror by his relationship to the contributor. It was there said: "The Stricklands themselves did not render any service to the State, but their zeal and interest were enlisted on the side of the prosecution to the extent of parting with their money to obtain the services of another to appear in the case as their representative, who could, perhaps, render services towards securing the conviction of the defendants, of more value than they themselves could. As indicated in the affidavit of H. L. Strickland, it may be that the Stricklands helped employ counsel with no desire to convict the defendants if they were not guilty. The desire to convict persons accused of crime only in the event they are guilty probably exists with the majority of persons who are prosecutors, with their names on the indictment as such. But generally a party does not employ and pay counsel to prosecute another for a crime with which he is charged, unless it is because the party employing counsel believes the party prosecuted to be guilty and wishes him convicted." (pp. 598-99.)

From what has been said in this division, it follows that grounds 5 and 7 of the amendment to the motion for new trial, with supporting affidavits, showed the disqualification of the juror, W. T. Quinton, because of relationship within the prohibited degree to Hubert Godfrey and Dick Godfrey, who had become special or volunteer prosecutors of the defendant. No countershowing was made by the State, and it was error to overrule these grounds. *Edwards* v. *State*, 174 *Ga.* 632 (1) (163 S. E. 157).

■ Ground 9 complained that the court erred in admitting in evidence, over the objection of the movant that the same were

irrelevant, immaterial, and prejudicial, three photographs or pictures of the body of the deceased, Grady Earl Holbert, which were identified as being photographs of the deceased taken after his death. Two of these showed wounds and cuts about the face and head, and specific wounds on the forehead and corner of the right eye. One showed the effect of intense rigor mortis in the body of the deceased.

There was no error in admitting these photographs, though it appears that, at the time the objections were made; one of counsel for movant stated to the court: "There has been no issue raised and will not be so far as the defendants are concerned as to the number of wounds testified to by the expert, about the location of these wounds, the extent of these wounds, or the result of these wounds." See, in this connection, *Smith* v. *State*, 183 *Ga.* 289, 290 (3) (188 S. E. 341); *Shafer* v. *State*, 193 *Ga.* 748 (7) (20 S. E. 2d, 34); *Russell* v. *State*, 196 *Ga.* 275 (1) (26 S. E. 2d, 528); *Weaver* v. *State*, 199 *Ga.* 267 (3) (34 S. E. 2d, 163); *Bryan* v. *State*, 206 *Ga.* 73 (2) (55 S. E. 2d, 574).

■ Special grounds 4, 6, and 8 alleged disqualification of certain jurors because of relationship within the prohibited degree to named contributors whose names appeared on the lists to which we have referred. The question of the relationship of the particular jurors named in these grounds cannot arise upon another trial, which is granted for the reasons stated in divisions 2 and 3 of this opinion, and on such trial the presiding judge will have for his guidance what has been ruled in these divisions as to the disqualification of jurors. Therefore, grounds 4, 6, and 8 will not be passed on. Nor is it necessary to make any ruling upon special ground 1, which assigned error on the refusal of the court to grant a postponement of the case.

■ Though counsel for the defendant expressly abandoned the general grounds of the motion for new trial, we have examined the evidence, and find that it fully supports the verdict.

■ For the reasons given in divisions 2 and 3, the court erred in overruling the motion for a new trial.

*Judgment reversed. All the Justices concur.*