35135. SPRADLIN *v.* THE STATE.

DECIDED APRIL 22, 1954—REHEARING DENIED MAY 5, 1954.

*A. B. Taylor, Charles Goodson, Wyatt & Morgan,* for plaintiff in error.

*Wright Lipford, Solicitor-General,* contra.

TOWNSEND, J. ■ The first special ground of the amended motion for new trial assigns error on the admission of testimony that Ambrose Spradlin, after returning from Hyatt's store, informed a witness that Brazeal was trying to kill his sister, and that he got "the large" rifle and loaded and unloaded the cartridge chamber, stating at the time that he was going over there. The testimony was objected to on the ground that, no conspiracy having been proved at that time, it was inadmissible as against the defendant, Frank Spradlin.

Other evidence in the case tended to show that trouble had been brewing between the Spradlins and Brazeal over a period of time, and that each had made threats or statements against the other; that, shortly before the defendant's brother went to his house, Brazeal had made a statement that he was going to "kill all of them"; that, immediately after Ambrose learned Brazeal was threatening to kill his sister, he got in the car with two rifles and drove at high speed to the home of the defendant, who was plowing in the field; that, immediately thereafter, both got in the automobile, and Frank took with him a pistol and a shotgun; that within minutes thereafter they were seen with Frank driving Ambrose's car and Ambrose in the back seat with a gun (pointed out the window, from which the jury might have inferred a planned arrangement to give Ambrose maximum freedom for shooting); and that, within a very few minutes thereafter, they passed the automobile driven by Brazeal, both cars stopped, and the fatal shooting took place.

Code § 38-302 provides as follows: "When, in a legal investigation, information, conversations, letters and replies, and similar evidence are facts to explain conduct and ascertain motives, they shall be admitted in evidence, not as hearsay, but as original evidence." Code § 38-306 provides: "After the fact of conspiracy shall be proved, the declarations by any one of the conspirators during the pendency of the criminal project shall be admissible against all." The defendant here was on trial for murder, for which reason it was proper for the State to introduce evidence tending to show premeditation and malice on his part, since in no case can there be murder without malice, express or implied. *Smith* v. *State*, 200 *Ga.* 188, 194 (36 S. E. 2d 350). A conspiracy is a combination or agreement between two or more

persons to do an unlawful act, and may be shown by acts and conduct as well as by direct proof or express agreement. *Breedlove* v. *State*, 84 *Ga. App.* 370 (7) (66 S. E. 2d 409). The fact that a party has received information upon which he acted is admissible, not to establish the truth of the information, but to explain the conduct of the party. *Coleman* v. *State*, 127 *Ga.* 282 (1) (56 S. E. 417). It follows from the above that, while courts should be careful to exclude evidence which is hearsay as to the defendant, such as declarations of others not made in his presence, such evidence is sometimes admissible by necessity when, as here, it is so closely connected with the events leading up to the criminal transaction as to have probative value bearing upon the motive or conduct of the defendant. The testimony here tended to explain the subsequent conduct of both the defendant and his brother, by inferentially providing a motive for him, as well as Ambrose, to arm themselves, leave their work, and drive the car in the manner in which they were seen. It was therefore admissible on the issue of malice or premeditation because a fair inference might be drawn by the jury from this testimony, in connection with the other facts of the case, that Ambrose's intention to arm himself and seek out Brazeal had been communicated to and shared by the defendant prior to the homicide. Declarations of another, even when made outside the presence of the defendant, may be relevant if so closely connected with the crime itself as to have probative value by showing motive or opportunity on the part of the defendant. In this connection see *Jones* v. *State*, 63 *Ga.* 395; *Ledbetter* v. *State*, 51 *Ga. App.* 560 (2) (181 S. E. 120). This ground is without merit.

■ The second special ground complains that an expert witness, after testifying that from the position of the bullet holes in the deceased's body it appeared that the bullets entered the lower back and came out the upper chest, was permitted to express an opinion that, if the deceased was standing, "the gun would have had to be lower and come up; if the gun was level he would have had to have bent over." This was not objectionable as calling on the witness to give his opinion as to the ultimate question to be decided by the jury (which question was not the angle of fire, but the guilt of the accused), or as being a conclusion, since a witness may testify as to his opinion or con-

clusion when he states the facts upon which the conclusion is predicated. *Merritt* v. *State*, 107 *Ga.* 675, 681 (34 S. E. 361); *Boyd* v. *State*, 207 *Ga.* 567 (63 S. E. 2d 394).

■ In the third special ground it is contended that the court erroneously allowed testimony to the effect that the defendant had stated some months previously to the shooting that he was going to kill Brazeal. In general, the rule as to threatening communications is as follows: "Upon the trial of one for murder, evidence of threats made by the accused against the deceased, uncommunicated to the latter, are admissible in behalf of the State as tending to show malice on the part of the accused. . . Threats made by the deceased against the defendant, uncommunicated before the homicide, are not generally admissible on the trial of a case involving the question as to whether or not the slayer was justified in taking the life of the deceased, but evidence of such threats is admissible when there is evidence tending to show that the deceased began the mortal conflict, and that the defendant killed him in self-defense." *Rouse* v. *State*, 135 *Ga.* 227 (4) (69 S. E. 180). The remoteness of a threat by the accused against the deceased does not affect its competency as evidence, but affects only its weight or probative value. *Vun Cannon* v. *State*, 208 *Ga.* 608, 612 (68 S. E. 2d 586). This ground is without merit.

■ The court did not err, as contended in the fourth special ground, in admitting in evidence a photograph showing the nature and location of the wounds of the deceased. *Bowens* v. *State*, 209 *Ga.* 524 (74 S. E. 2d 466); *Tatum* v. *State*, 206 *Ga.* 171 (4) (56 S. E. 2d 518); *Weaver* v. *State*, 199 *Ga.* 267, 270 (34 S. E. 2d 163).

■ The fifth special ground contends that a new trial should be granted because one of the jurors, a few days after the homicide and before the trial of the case, expressed an opinion as follows: "There is too much killing in Heard County, and I am not in favor of turning Frank Spradlin and Ambrose Spradlin loose, as I think they should have some time," which fact is shown by the affidavit of a person hearing the remark, and which was not known to the defendant or his counsel until after the verdict. This ground of the motion is opposed by a response on behalf of the State, attached to which as an exhibit

is an affidavit of the juror in question in which the affiant swears that he was not biased or prejudiced when sworn as a juror; did not, prior to being empaneled as a juror, form and express an opinion as to the guilt or innocence of the defendant, either from having seen the crime committed or from having heard the testimony under oath; did not from some other cause form and express an opinion which was fixed and determined prior to being empaneled; that he answered the statutory questions on his voir dire; and that his verdict was rendered in accordance with the evidence produced upon the trial of the case and from no other evidence or reasons whatsoever.

"One who from some other cause [than having seen the crime committed or having heard the testimony under oath] has formed and expressed an opinion which is not fixed and determined, and who indicates his competency by answering the statutory questions on his voir dire, is not an incompetent juror." *Wilburn* v. *State,* 141 *Ga.* 510 (3) (81 S. E. 444); *Johnson* v. *State,* 209 *Ga.* 333 (2) (72 S. E. 2d 291). The juror answered the statutory questions on his voir dire, as provided by Code § 59-806, in such manner as to qualify as a competent juror, and by counter-affidavit here swears that he was not prejudiced and rendered his verdict in accordance with the evidence upon the trial of the case. Accordingly, the refusal of the trial court to grant a new trial on this ground is not error.

■ As to the general grounds, the evidence was in substance as follows: that Ambrose and Frank Spradlin were brothers-in-law of the deceased, John Brazeal; that on the morning in question their sister, Ev, Brazeal's wife, had fled to a neighbor's house and sent word to her brothers that Brazeal was trying to kill her; that this word was delivered to Ambrose at Hyatt's store, and he immediately returned to his home, procured a 22-caliber semi-automatic rifle and a high-powered Springfield rifle, drove to Frank Spradlin's house, and the latter, with a 20-gauge shotgun and a 38-caliber pistol drove the car while Ambrose sat in the back seat with a gun pointed out the window; that they drove past the neighbor's house where the sister was and saw the owner in the yard, but did not see their sister or her husband and did not stop. There was further testimony by various witnesses that Brazeal had been seen with his 12-gauge

single-barrel shotgun and had stated that he was "going to kill every one of them"; that he went to the neighbor's house where his wife was hidden and also to Hyatt's store, and left word at both places that she had better get on back home; that he wasn't going to kill her or anybody else if he could help it. As Brazeal left the store, the Spradlins approached it, and the cars passed each other a few yards north of the store, where various witnesses were present. Both stopped, and the Spradlin car rolled backward until the rear wheels of both vehicles were almost even. According to the defendant's statement, which was corroborated by the testimony of Ambrose Spradlin, Brazeal pulled a gun on them as they passed and stopped his car, which was the reason they also halted, and just as Frank got out of the car on the east side, Brazeal fired but did not hit him, and the defendant fired the shotgun, then crossed the road to a ditch on the east side of the Brazeal car. Witnesses swore that the "big gun" fired first. The largest gauge or caliber was the 12-gauge shotgun of Brazeal; however, there were also bullet holes in the front windshield of the Brazeal car, which an expert witness testified were fired from the front of the car and toward it at an angle. Ambrose further testified that, as Frank crossed the road, he went to the west side and front of the Spradlin car and emptied the 22 rifle, firing 10 or 12 shots into the back of Brazeal's car. Brazeal fired at him with the shotgun and reloaded it behind the protection of the car door. As Brazeal was about to fire again he shot the weapon from his hand, wounding Brazeal's left hand and dismantling the shotgun into three pieces, and almost at the same moment the defendant, who in his statement said he saw Brazeal taking aim at his brother, discharged his pistol twice into Brazeal's body, inflicting mortal wounds. Brazeal had also been wounded by shotgun pellets in the head and shoulder. There were numerous bullet holes in the automobile and there was in the car, in addition to the shotgun, a home-made blackjack. The shooting occurred, insofar as the time may be gleaned from the testimony, within less than an hour after Ambrose Spradlin was informed that the deceased was threatening to kill his sister, and about the same length of time after the deceased stated to a witness that he was going to kill all of them.

Whenever a homicide is neither justifiable nor malicious, it is manslaughter, and, if intentional, is voluntary manslaughter. *Davis* v. *State,* 68 *Ga. App.* 296(3) (22 S. E. 2d 762). If one seeks an interview with another for the purpose of mutual combat with deadly weapons, his crime is murder or voluntary manslaughter, according as his conduct is marked by deliberation or excitement. *Roberts* v. *State,* 65 *Ga.* 430, 435. Mutual combat exists where there is a fight and both parties are willing to fight. *Slocumb* v. *State,* 157 *Ga.* 131 (3a) (121 S. E. 116). "Mutual combat does not mean a mere fist fight or scuffle. It usually means an encounter with deadly weapons, in which the death of either or both of the parties is imminent." *Watson* v. *State,* 66 *Ga. App.* 242 (17 S. E. 2d 559); *Dudley* v. *State,* 67 *Ga. App.* 256 (19 S. E. 2d 833). And, even though the accused deliberately seeks mutual combat with a deadly weapon, the jury may find him guilty of manslaughter if he kill under excitement rather than deliberately. *Harris* v. *State,* 184 *Ga.* 382, 390 (191 S. E. 439); *Dickens* v. *State,* 137 *Ga.* 523, 529 (73 S. E. 826). Even though the evidence for the State makes out a case of murder, and that for the defendant a case of justifiable homicide, where there is evidence of mutual combat from which the jury might reach the conclusion that the killing, while intentional, was in hot blood and without malice, and that the circumstances of the combat were such as not to justify the defendant, the reduction of the crime from murder to voluntary manslaughter under the theory of mutual combat is necessarily involved. *Ison* v. *State,* 154 *Ga.* 408 (1) (114 S. E. 351); *Mitchell* v. *State,* 183 *Ga.* 217 (3) (188 S. E. 3); *Linder* v. *State,* 17 *Ga. App.* 46 (1) (86 S. E. 90). The jury was authorized, from the evidence here, to find that both parties to the affray were armed with deadly weapons and were seeking each other for the purpose of mutual combat. That the defendant, who was driving the automobile, failed to stop at the neighbor's house where he had received word his sister was, and inquire after her, was a circumstance to be considered as tending to show that he was primarily seeking an encounter with the deceased. The fact that, as the automobiles passed each other, the shooting immediately began and both cars stopped to carry on the fight was another circumstance to be considered as tending to show that all par-

104

ties thereto were seeking the affray. The number and character of the weapons, as well as the provocation given, were to be considered on the question of mutual intention and desire to fight. Under all the evidence, the verdict of voluntary manslaughter was authorized, and the general grounds of the motion for new trial are without merit.

The trial court did not err in denying the motion for a new trial.

*Judgment affirmed. Gardner, P. J., and Carlisle, J., concur.*