No. 87.—JOEL BUTLER, plaintiff in error, vs. WINGFIELD W. LIVINGSTON, defendant in error.

[1.] Until the contrary appears, every man is presumed to be cognizant of the law; and whenever admissions are made, as to the title of property, by the party in possession, the presumption is, that they were made, not only with a knowledge of the facts, but of his legal rights, also, growing out of those facts.

[2.] Whenever the verdict is decidedly and strongly against the weight of evidence, a new trial will be granted.

Trover, &c. in Sumter Superior Court. Tried before Judge PERKINS, August Term, 1853.

The questions arose, in this cause, upon the trial of an action of trover, brought by Joel Butler against W. Livingston, for the recovery of three negroes. The defendant claimed them as a gift from the plaintiff, his father-in-law. On the trial, he proposed to prove the value of plaintiff's property, which being allowed by the Court, is the first error assigned in the record.

The following cross-interrogatories were propounded to L. L. Harrison, a witness for the plaintiff: "Did you not threaten to kill, or use violence to W. Brady, if he went into the field to see the negroes—and did you not stand in front of Brady, with a stick in your hands, when he, as defendant's agent, tried to get sight of the grown negroes? Did you not go, yourself, to Wilkinson county, for the plaintiff, that he might make an effort to get the negroes? Have you not said, in the presence of Frank Lewis, at your house, when Livingston came for the negroes, that these negroes were neither Butler's nor Livingston's, but your own, or words to that effect"?

Defendant afterwards proposed to prove by F. B. Lewis, that he heard Harrison say, as Brady drove up to his house, in 1849, that the negroes were his, and that neither Livingston nor Butler should have them; but, that he intended to keep them. Harrison objected to Brady and Livingston's going into the

field to see the negroes. Harrison said that Brady never should live to get there. Brady said he would go, and started; Harrison walked after him some fifty yards, and then sent young Butler to load up the gun. Brady still walked on, and after following him two hundred yards, Harrison stepped before Brady, and told him if he went farther, he would wear out his stick over him. When Brady got near the negroes, Harrison said he would kill Brady if he attempted to move them. Witness heard Harrison claim the negroes as his, several times. This testimony was offered to impeach L. L. Harrison, and was objected to, because a sufficient foundation was not laid. The Court over-ruled the exception, and this is the next error assigned.

Defendant also offered in evidence, to impeach Harrison, his own depositions, taken by the plaintiff in this case, and ruled out by the Court on a former trial, at the instance of defendant, on the ground that one of the cross-interrogatories was not sufficiently answered. Plaintiff objected to their admission, which being over-ruled by the Court, is the next error assigned.

Counsel for defendant requested the Court to charge the Jury, "that the admissions of the defendant, made to several witnesses, (if the Jury believed they were made with a full knowledge of all the facts,) that the property was not his, but Butler's, are binding upon him". The Court charged, that if these admissions were made with a full knowledge of all the facts, *and his rights growing out of these facts,* they were evidence against the defendant, but not conclusive ; which charge and refusal to charge, are assigned as error.

The Court charged the Jury, "that if a witness was discredited in a material point, they were not bound to believe any of his testimony, unless corroborated by another witness or circumstances, and then the Jury were authorized to receive his evidence, more from the facts and circumstances of corroboration, than from anything that he had sworn". This charge, also, is assigned as error.

A motion was made for a new trial, on several grounds ;

among others, that the verdict was contrary to the evidence, and contrary to the charge of the Court. The refusal to grant a new trial, is also assigned as error. There was conflicting evidence, as to the terms on which the negroes were placed in defendant's possession. The weight of testimony and number of witnesses, was against the verdict.

SCARBOROUGH & HAWKINS, for plaintiff in error.

McCAY & SULLIVAN, for defendant.

*By the Court.*—LUMPKIN, J. delivering the opinion.

We propose to consider two, only, of the numerous assignments of error.

First, the charge of the Court, as to the admissions made by the defendant, relative to the title of the negroes. And secondly, the refusal to grant a new trial, on the ground that the verdict was decidedly and strongly against the weight of evidence.

[1.] Upon the first point, the Court instructed the Jury, that if they believed the witnesses, Pitman, Barton, Anderson and George W. Harrison; and that Livingston made the admissions testified to by them, acknowledging that the property was Butler's, and not his, with a full knowledge of all the facts, *and his rights growing out of those facts,* they were evidence against him, but not conclusive.

In the opinion of this Court, the rule of evidence controlling this case, was not correctly stated by the presiding Judge. To make the admissions of the party testimony at all, His Honor supposed that it must not only appear that they were made with a full knowledge of all the facts, *but likewise, of his rights growing out of those facts.*

Now, until the contrary appears, every man is taken to be cognizant of the law. The doubt and difficulty has been, not whether the burden of proof is not cast upon him who seeks to screen himself from the effects of his acts, by showing that

they were done in ignorance of his legal rights; that has never been disputed. And the only question is, whether the party will be allowed this excuse. (12 *East.* 38.  2 *Jac. & Walk.* 263.  5 *Taunton,* 143.  3 *B. & Cresw. R.* 280.  1 *John. Ch. R.* 512, 516.  6 *Ibid,* 166.  9 *Cowen's R.* 674.  4 *Mass. R.* 342.  7 *Id.* 452.  *Id.* 488.  9 *Pick. R.* 112.  1 *Bur. R.* 27.  1 *Atk.* 591.  1 *Ves. & Bea.* 23, 30.  1 *Ch. Cas.* 84. 1 *Vern.* 243.  2 *Johns. Ch. R.* 51.  1 *Pet. S. C. R.* 1.  6 *Johns. Ch. R.* 169.  *Id.* 170.  8 *Wheat. R.* 174.  2 *Mason,* 244, 342.)

Whereas, in this case, it was held that the solemn admissions of the fact, by the defendant, that the title to this property was not in him, but in the plaintiff, did not make even a *prima facie* case, as to proof, unless Butler went further, and showed that Livingston made these admissions with, not only a full knowledge of all the facts, *but of his legal rights growing out of those facts.* · Such a doctrine, we apprehend, is not only unsupported by authority, but manifestly against principle; and upon this ground, alone, we should be compelled to remand the cause for a re-hearing. For, as no attempt was made to prove what the law presumed without proof, to wit: that Mr. Livingston was cognizant of the law regulating the tenure by which he held these negroes, the charge, as given, was tantamount to instructing the Jury to find a verdict for the defendant, so far as the case rested on the testimony of the four witnesses, Pitman, Barton, Anderson and G. W. Harrison.

[2.] This testimony, then, being competent, was not the verdict, decidedly and strongly, against the weight of evidence? For the purpose of showing that it was, we will rehearse a portion of it.

James Pitman testified, that he knew the defendant while he resided in Randolph county; that after the death of his wife, he had a conversation with him about the negroes which came by her, when Livingston either said that he was going after the plaintiff, or going to write to him, to come for the negroes. James Barton testified, that he had a conversation with Wingfield Livingston, the latter part of the year 1849, about the

Butler *vs.* Livingston.

negrocs sued for, in which he said the negroes did not belong to him, but that they belonged to Butler, (the plaintiff) and that he had delivered them up to Harrison. (Harrison was the son-in-law of Butler, and acted as his agent, in respect to this property, as the record shows.) Wiley Anderson testified, that Livingston told him that the negroes in controversy, were not his, but that they belonged to Butler, and that he was going to Wilkinson to see Butler, and ascertain if he would allow him to keep the negroes; and that if he would not, he might come after them. Both of these two last witnesses state that the conversation to which they refer, took place after the· death of Mrs. Livingston. George W. Harrison swears, that he knew the negroes in the possession of the defendant, in Randolph county, from the spring of 1849 till the fall of that year; and that Livingston said that they were the property of· the plaintiff.

In this recapitulation of the testimony, I have omitted to refer, both to the depositions of Seaton S. Harrison, the son-in-law, and George W. Butler, the son of Joel Butler, the plaintiff, and by whom the fact of an actual loan, at the time the property was delivered, is fully established. Some dis-- crepancy of statément, as to an unimportant matter, caused the accuracy of the memory of the former to be somewhat questioned. Not the slightest imputation, however, was attempted to be cast on young Butler, except that he was nearly related to the plaintiff, and quite young, when the transaction took place about which he testifies.

But the other four witnesses, whose evidence I have, in sub-- stance, recited, stand unimpeached; and, therefore, we infer· are unimpeachable; and they all concur in proving the uniform declarations of the defendant, that the title to these negroes. was in the plaintiff.

Until this presumptive case, then, can be rebutted, either by· falsifying. the testimony of these four witnesses, or adducing the counter acknowledgments of the plaintiff, that he had *given* the property to his daughter; or showing that Mr. Livingston made these oft-repeated disclaimers of right or title in

VOL. XV. 72

himself, under a mistake as to his rights, the weight of the evidence is decidedly and strongly with the plaintiff.