33023. GRADY COUNTY *et al. v.* BANKER.

DECIDED MAY 8, 1950. REHEARING DENIED JUNE 7, 1950.

Eugene Cook, Attorney-General, W. V. Rice, Cam D. Dorsey, Assistant Attorneys-General, Cain & Smith, for plaintiffs in error.

Ira Carlisle, contra.

TOWNSEND, J. (After stating the foregoing facts.) ■ Special grounds 1 and 2 contend that the trial court erred in submitting to the jury the issue of whether or not the defendant was negligent in failing to post signs along the highway to warn the plaintiff and others similarly situated of the condition of the bridge in time for the speed of motor vehicles to be sufficiently reduced to avoid injury and damage. Special ground 9 contends that the trial court erred in failing to instruct the jury that such signs and warnings should be considered only upon the question as to whether or not the plaintiff was guilty of negligence which contributed to an injury or such as amounted to lack of the exercise of ordinary care on his part. One paragraph of the petition alleges that there were no signs or warning signals posted at the bridge or near the approaches thereto so as to give the plaintiff any notice of the existing condition of the bridge and its approaches. Another paragraph of the petition in part contends that the injuries and damages to the plaintiff and his property proximately resulted from certain specified acts of negligence, included among which is the specification of failing to post adequate warnings as to the dangerous condition of the bridge and its approaches. Both these allegations of the petition were categorically denied by the answer and thus the issue thereon was joined. Neither a county nor the State Highway Department when it has assumed jurisdiction over a State-aid road located in such county, is under a legal duty to post warning signs on the approaches to its bridges. Warren County v. Battle, 48 Ga. App. 240, 243 (172 S. E. 673); Wilkes County v. Tankersley, 29 Ga. App. 624 (116 S. E. 212); Smith v. Colquitt County, 37 Ga. App. 222 (139 S. E. 682). This omission on the

part of the defendant, therefore, is not such negligence as authorizes a recovery. However, there are other acts of negligence specified which, if supported by the evidence and found by the jury to be true, are sufficient to support a verdict for the plaintiff. The defendant interposed no demurrer to the petition. In *Reeves* v. *Jackson*, 113 *Ga.* 182 (1) (38 S. E. 314), it is held: "When a defendant goes to trial without demurring to the plaintiffs' petition, no question as to its legal sufficiency is before the court." Both the plaintiff and the defendant in the instant case introduced evidence regarding signs, which evidence was authorized by the allegations of the petition and the denial thereof as contained in the answer. In *Savannah, Fla. & Western Ry. Co.* v. *Ladson*, 114 *Ga.* 762 (1) (40 S. E. 699), it is held: "When a defendant by his answer joins issue with the plaintiff without demurring to the petition, it is not erroneous for the court to instruct the jury that if the plaintiff proves his case as laid, he is entitled to recovery." See *Flewellen* v. *Flewellen*, 114 *Ga.* 403 (40 S. E. 301), and cases cited. It is not the duty of the trial court to determine the sufficiency of every allegation contained in the petition of a plaintiff where it has not been tested by demurrer and while this specification of negligence, even if proved, could not support a verdict for the plaintiff, yet under the authorities herein cited, the trial court did not err in any of the particulars of which complaint is here made. Counsel for the defendant relies on *Central of Ga. Ry.* v. *Keating*, 177 *Ga.* 345 (4-b) (170 S. E. 493), wherein it is held: "The court erred in charging the jury that the plaintiff would be entitled to recover if he proved any one or more of his alleged grounds of negligence, where one of such grounds did not constitute a legal basis for a recovery." However, an examination of that case reveals that a demurrer was interposed to the part of the petition thus alleging an insufficient ground of negligence. The Supreme Court held that the "trial court erred both in overruling the demurrer and in charging the jury" in the manner indicated by the foregoing quotation from that case. The allegation that there were no signs is a proper pleading because the same is material to show lack of contributory negligence on the part of the plaintiff (see *Haralson County* v. *Hamrick*, 41 *Ga. App.* 196 (152 S. E. 583), but, as stated, is an insufficient specification of negli-

gence to support an action on the part of the plaintiff. Special grounds 1, 2 and 9 are without merit.

Special ground 3 contends that the trial court erred in failing to charge that if the plaintiff by ordinary care could have avoided the consequences to himself of the negligence of the defendant he would not be entitled to recover. Special ground 4 contends that the trial court erred in charging the jury as follows, "I charge you, gentlemen of the jury, that in the event you should find that the negligence of the defendant was greater than the negligence of the plaintiff and that the plaintiff, in the exercise of ordinary care, could have avoided the consequences of the defendant's negligence, then you would not be authorized to find in favor of the plaintiff." Special ground 8 contends that the trial court erred in charging the jury as follows: "Those damages, when ascertained, should be reduced by the jury in proportion to the degree of negligence attributable to the defendants." It is contended that the failure to charge as set out in special ground 3 deprived the defendant of a material defense because the evidence admissible under the answer of the defendant would have authorized the jury to find that the plaintiff himself was lacking in the exercise of ordinary care, and by the exercise thereof could have avoided the consequences of the defendant's negligence. The excerpt complained of in special ground 4 is contended to be error in that the trial judge joined together a part of his charge relating to comparative negligence with a part of his charge to the effect that if it be found that the plaintiff in the exercise of ordinary care could have avoided the consequences of the defendant's negligence, the plaintiff would not be entitled to recovery. This is contended to be misleading in that the jury may have gained the impression therefrom that the latter part of the excerpt would apply only in the event the first part also would apply. The excerpt complained of in special ground 8 is contended to be error by reason of the use of the word "defendant," it being contended that the word "plaintiff" should have been used in lieu thereof, this particular excerpt being a part of the charge relating to the doctrine of comparative negligence. These special grounds are treated together because they all relate to the charge of the court, which, when considered as a whole, is not subject to the criticism there-

in contained. See *Goddard* v. *Boyd*, 144 *Ga.* 18 (3) (85 S. E. 1013). When the charge is thus construed the excerpt alleged to have been omitted as set forth in special ground 3 is shown to have been amply covered. Also, construing the charge as a whole, it appears that not only did the court fully and fairly charge that the plaintiff would not be entitled to recover, should it be found from the evidence that he could, by the exercise of ordinary care, have avoided the consequences of the negligence of the defendant, but the doctrine of comparative negligence was so charged as to properly present this principle of law and in such way as to neither confuse nor mislead the jury. The excerpt complained of in ground 8 which shows that the trial court used the word "defendant" where the word "plaintiff" should have been used appears to be a slip of the tongue. In *Southern Ry.* v. *Merritt*, 120 *Ga.* 409 (1) (47 S. E. 908), it is held as follows: "A verbal inaccuracy in a charge, resulting from a palpable slip of the tongue, and which clearly could not have misled the jury, is not cause for a new trial." The court charged in substance that if it was found that both the plaintiff and the defendant were negligent, that the negligence of the defendant was greater than that of the plaintiff, and that the plaintiff could not by the exercise of ordinary care have avoided the negligence of the defendant, the plaintiff could recover. He then charged in substance that the amount of the recovery when ascertained should be reduced by the jury in proportion to the degree of negligence attributable to the defendant. While the recovery should have been reduced in proportion to the negligence attributable to the plaintiff, and the use of the word "defendant" here was obviously a slip of the tongue, it was not misleading because the jury could have followed those instructions literally and, when the negligence of each was thus measured and the recovery reduced proportionately as it was found to be the responsibility of each, fixing the recovery according to the negligence of the defendant would automatically reduce it according to the proportionate negligence of the plaintiff. The assignments of error contained in special grounds 3, 4 and 8 are without merit.

■ Special ground 5 contends that the trial court erred in explaining to the jury, in substance, that while the suit was

brought against Grady County, the State Highway Department, having been vouched to defend the action in accordance with § 95-1710, it having assumed jurisdiction of the highway on which the bridge in question was located, is the defendant whose duty under the law it would be to pay any verdict returned in favor of the plaintiff. It is contended that this charge could only serve to prejudice the defendant and have a tendency to make the jury more liberal in its findings in favor of the plaintiff than it might be if it were considering the county in which they lived, and counsel for the defendant contend that such information should be withheld from the jury the same as where a defendant in a damage suit is covered by insurance, the latter being the one who ultimately will pay. However, the jurors of Grady County are citizens of the State of Georgia. As such the government of Grady County is their government no more than is the government of the State of Georgia. As such citizens they are presumed to be cognizant of the laws of this State. See *Butler* v. *Livingston*, 15 *Ga.* 565 (1). Code § 95-1710 which provides for the vouching of the Highway Department by counties to defend actions of this type and further provides for the ultimate liability is such a law. Under such circumstances, neither the defendant nor the vouchee can complain of prejudice by reason of this charge. The circumstances would be otherwise if this were such a statute as is specifically forbidden to be read in a charge to a jury. See Code § 95-1808, relative to the failure of railroads to place stop signs at crossings. Special ground 5 of the amended motion for a new trial is therefore without merit.

■ Special ground 6 contends that the trial court erred in overruling the motion of counsel to direct a verdict in favor of the defendant. It is never error to refuse to direct a verdict. See *Roberts* v. *Groover*, 161 *Ga.* 414 (131 S. E. 158). This assignment of error is without merit.

■ Special ground 7 contends that the trial court erred in charging the jury as follows: "I charge you, gentlemen of the jury, that it is the duty of the proper county authorities to construct and maintain bridges across streams in a workmanlike and proper manner, so that any person may use them safely in ordinary travel." It is contended that this charge places a greater

burden upon the defendant than the law directs and that it makes of the county an insurer of persons traveling in an ordinary manner over bridges. This is the exact language of the rule as laid down in *Stamps* v. *Newton County*, 8 *Ga. App.* 229 (5) (supra), and repeated in *Lincoln County* v. *Gazzaway*, 43 *Ga. App.* 358 (2) (158 S. E. 647). It is true that in the *Stamps* case headnote 5 continues as follows: "but this duty is not one of extraordinary care and diligence, nor does its exercise extend to extraordinary occasions, beyond the ken of general experience. The law does not make the county authorities insurers of the safety of any of those who use bridges." However, construing the charge as a whole, the trial court clearly referred to ordinary care and not extraordinary care. Had the defendant desired the trial court to have included this part of headnote 5 of the *Stamps* case in his charge, timely written request should have been made therefor. The rule as given in charge by the court and complained of in special ground 7 is correct and, while it is well settled that counties are not insurers of the safety of those who use bridges, failure to so charge in the absence of request is not error. This special ground of the amended motion for a new trial is without merit.

■ Special ground 10 contends that the trial court erred in failing to charge the jury that the plaintiff would not be entitled to recover unless the jury found from the evidence that the proper authorities of the county had knowledge of the defective condition of the bridge, or unless such defects had existed for such a length of time that knowledge thereof on the part of the proper county authorities would be presumed. The plaintiff's recovery here must depend upon whether or not this bridge and its approaches were constructed in a defective manner and not upon any defect that occurred in the bridge subsequent to its construction, since there is no evidence that would authorize a finding that the general condition of the bridge was any different at the time of the injury than at the time of the construction of the bridge. The undisputed evidence of the Chairman of the Board of County Commissioners was that the county authorities had full knowledge of the condition of this bridge and had had it since the Bailey Bridge had been placed in this location. Also the undisputed evidence of certain employees of the State High-

way Department was that they placed the bridge there in this condition. It follows that the evidence demanded a finding by the jury that the defendant had actual notice of the condition of the bridge, whatever it was, and under such conditions a failure to charge which would otherwise be error is no ground for reversal. See many cases cited under Code (Ann.) § 70-207, catchword, "Verdict." Special ground 10 is therefore without merit.

■ In consideration of the general grounds of the amended motion for a new trial, when the evidence is construed in its light most favorable to support a verdict, the jury was authorized to find facts substantially as follows: that on or about April 1, 1948, a flood condition rendered unusuable a bridge across a stream in Grady County on Highway 93, which was a State aid road, the jurisdiction of which had been assumed by the Highway Department; that shortly thereafter the State Highway Department repaired this bridge by placing on the approach and abutments thereof what is known as a "Bailey Bridge" which the Highway Department had obtained from the Federal government; that a Bailey Bridge is a portable bridge used somewhat extensively by the Federal government during World War II in crossing streams where there were no bridges; that such bridges are constructed with wood floors on steel stringers; that this particular bridge had an overall length of 80 feet, the floor of the main bridge being 20 feet, and the ramp at each end composed of 20 feet of bridge spans and 10 feet of graded asphalt; that the asphalt was graded up six inches, and the bridge ramp raised the level to $19\frac{1}{2}$ inches above the road level; that this bridge is situated over a stream on the highway in a hollow, the road sloping from the north several hundred feet down to the bridge and then up another slope south of the bridge a like distance; that on September 24, 1948, plaintiff was driving his car along this road and in it were riding also his wife and three small children; that one of the children was lying asleep on the front seat with his head in his mother's lap and his feet in his father's lap; that another of the children was standing between the front seat and the windshield; that the third child was lying asleep on some baggage which was placed on the back seat of the automobile; that when the plain-

tiff came over the hill in sight of the bridge he was running approximately 50 miles per hour; that somewhere in this vicinity he observed a sign with the word "Slow" thereon and he slackened his speed on observing this sign; that as he approached the bridge he observed another sign which either contained the warning "One Way Bridge" or "Narrow Bridge"; that upon observing this sign he looked to the south and saw that there was no automobile approaching him that could meet him on the bridge; that the peculiar circumstances and construction of the bridge which resulted in the floor being 19½ inches above the pavement with steep ramps approaching it from either end was not apparent to the plaintiff until he was within 50 feet of the bridge; that he was a non-resident of the State and unfamiliar with this particular road and bridge; that it was not apparent to him that the bridge was unsafe; that at that time he was driving approximately 40 miles per hour; that when he was within 50 feet of the bridge and ascertained its condition it was unsafe for him to use the brake to slacken his speed further because of the position in which his children were located in the car and because such action on his part might cause the car to swerve into an abutment of the bridge; that upon entering the bridge his car bounced severely going up the first ramp and again going down the second one; that this resulted in 3 of his inner tubes blowing out and the complete loss of control of the automobile; that the car turned over some distance south of the bridge; that the plaintiff was injured in certain particulars, and his car damaged to the extent of approximately $1005.

The answer alleges that it was unsafe to operate the automobile over the bridge in question at a speed greater than 25 miles per hour. Witnesses for the defendant also testified to this fact. Code § 95-1001 provides for liability on the part of counties "for all injuries caused by, reason of any defective bridges, whether erected by contractors or county authorities." Whether a bridge erected on a paved highway over which the operation of automobiles at the speed limit prescribed by the laws of Georgia may otherwise safely travel is defective when it is so erected that it is unsafe to use it at a speed greater than 25 miles per hour is a jury question. See *Greene County* v. *Walker*, 10 *Ga. App.* 347 (73 S. E. 424); *Bibb County* v. *Worth-*

*en,* 47 *Ga. App.* 538 (2) (170 S. E. 925); *Cox* v. *Ware County,* 52 *Ga. App.* 45 (1) (182 S. E. 408); *Havird* v. *Richmond County,* 176 *Ga.* 722 (168 S. E. 897). On the question of whether or not the plaintiff was in the exercise of ordinary care for his own safety, as stated, the maximum speed limit in this State for an automobile of the type and character being operated by the plaintiff is 55 miles per hour. Code (Ann. Supp.), § 68-301. However, subsection (a) of this Code section provides: "No person shall operate a motor vehicle upon any public street or highway at a speed that is greater than is reasonable and safe, having due regard to the conditions then existing, including the width, grade, character, traffic and common use of such street or highway, or so as to endanger life or limbs, or property in any respect whatsoever." Subsection (i) of Code § 68-303 provides as follows: "An operator shall reduce speed at crossings or intersections of highways, on bridges, or sharp curves and steep descents, and when passing any animal being led on the highway." The evidence is undisputed that when the plaintiff came in sight of the bridge there was a "slow" sign erected alongside the highway. The evidence is undisputed that he reduced his speed from approximately 50 to approximately 40 miles per hour. He was therefore in the first instance not guilty of negligence per se by exceeding the speed limit. In the second instance he was not guilty of negligence per se by failing to reduce speed on approaching the bridge. As to whether or not he was guilty of negligence per se for the violation of Code subsection 68-301 (a) depends upon the manner in which the width, grade, character, traffic and common use of the highway appeared to an ordinary traveler upon approaching the bridge. The jury was authorized under the evidence to find that the plaintiff violated this provision of our law. On the other hand, while the evidence was in sharp conflict on this point, the jury was authorized to find that the condition of this bridge was not apparent to the plaintiff until he had reached a point within 50 feet of it and at that time it would have been more dangerous for him to have reduced his speed to 25 miles per hour than to have continued at the rate of 40 miles per hour. The jury therefore was authorized to find that he was not guilty of any negligence per se. On the question of whether or not he was in

the exercise of ordinary care as a matter of fact, had the condition of the bridge become apparent to the plaintiff at a time when he was a sufficient distance away from it to determine its condition, his failure to reduce his speed sufficiently to safely approach the bridge would amount to a lack of the exercise of ordinary care on his part. However, as previously pointed out, the jury was authorized to find that the condition of the bridge was not so apparent to the plaintiff. Therefore, the same evidence which authorized the jury to find him not guilty of negligence per se also authorized a finding that he was in the exercise of ordinary care as a matter of fact under the circumstances.

The verdict is authorized by the evidence. It has the approval of the trial judge. It will therefore not be disturbed by this court.

*Judgment affirmed. MacIntyre, P.J., and Gardner, J., concur.*