41277. ATLANTA STOVE WORKS, INC. et al. v. HOLLON.

Argued May 3, 1965—Decided December 1, 1965—
Rehearing denied December 20, 1965.

*Kilpatrick, Cody, Rogers, McClatchey & Regenstein, Thomas C. Shelton, William W. Cowan,* for plaintiffs in error.

*Houston White,* contra.

FELTON, Chief Judge. ■ Special demurrer numbered 2 is as follows: "Defendants demur specially to, and move to strike, Paragraphs 40 (a), 40 (b), 40 (c), and 40 (d) of the petition on the ground that the allegations therein are duplicitous, evasive and uncertain in that the allegations in said paragraphs can be construed as alleging that defendant Letson proceeded into said intersection on a yellow or amber light and that defendant Letson proceeded into said intersection against a red light, and defendants, therefore, cannot determine upon which of said duplicitous theories or allegations the plaintiff intends to proceed."

Paragraphs 40 (a), (b), (c), and (d) of the petition allege as follows: "That defendant Atlanta Stove Works, Inc., and defendant Letson were negligent, jointly and severally, in that said Letson at said time and place: (a) Drove said trailer truck toward said intersection at said time and place without heeding and in disobedience to the official traffic control light suspended in the middle of said intersection, and the official traffic control light suspended on the pole at the southeast corner of said intersection, each of which was facing defendant Letson as he drove toward said intersection, and was lighted with the yellow or amber light facing west on Campbellton Road, which warned defendant Letson that the red light signal would be exhibited immediately thereafter and that he should not drive said tractor-trailer into or across said intersection when said red light was exhibited, but should bring said truck to a stop and not enter said intersection while said yellow or amber light was exhibited, contrary to and in violation of Section 30.95 of the Atlanta City Code of 1953, as amended, and reenacted as Section 30.95 of the Traffic Code of the City of Atlanta, approved August 7, 1957, a valid ordinance of the City of Atlanta in existence at said time and place and a copy of which ordinance is hereto attached, market Exhibit B, and made a part hereof, and particularly subparagraph (b) thereof. Petitioner charges said negligence as negligence per se. (b) Failed to exercise ordinary care in not observing and in not obeying the traffic control lights suspended in the middle of said intersection, and the traffic control light suspended on the pole at the southeast corner of said

intersection, each of which was facing defendant Letson as he drove toward said intersection, and was lighted with the yellow or amber light facing west on Campbellton Road and toward said Letson, and which defendant Letson knew warned him that the red light signal would be exhibited immediately thereafter and that he should not drive said tractor-trailer into or across said intersection when said red light was exhibited, but should bring said truck to a stop *and not enter said intersection while said yellow or amber light was exhibited.* (c) Drove said tractor-trailer truck into and across said intersection at said time and place and into the automobile of petitioner, without heeding and in disobedience to the official traffic-control light suspended in the middle of said intersection, and the official traffic-control light suspended on the pole at the southeast corner of said intersection, each of which was facing defendant Letson as he drove into and across said intersection, and was lighted with a red light facing west on Campbellton Road, which warned and required defendant Letson to stop said tractor-trailer before entering said intersection, and to hold said tractor-trailer standing or stopped until the green light in said signal lights facing him became lighted, contrary to and in violation of Section 30.95 of the Atlanta City Code of 1953, as amended, and reenacted as Section 30.95 of the Traffic Code of the City of Atlanta approved August 7, 1957, a valid ordinance of the City of Atlanta in existence at said time and place and a copy of which ordinance is hereto attached, marked Exhibit B, and made a part hereof, and particularly subparagraph (c) thereof. Petitioner charges said negligence as negligence per se. (d) Failed to exercise ordinary care in driving said tractor-trailer truck into and across said intersection at said time and place and into the automobile of petitioner, without heeding and in disobedience to the traffic-control light suspended in the middle of said intersection, and the traffic-control light suspended on the pole at the southeast corner of said intersection, each of which was facing defendant Letson as he drove into and across said intersection, and was lighted with a red light facing west on Campbellton Road and toward said Letson, said light having become red before de-

fendant Letson drove said tractor-trailer truck into said intersection."

Paragraphs 40 (a) and (b), supra, construed against the pleader, allege that the defendant driver disobeyed the yellow or amber traffic signals, which warned him that he should not enter the intersection while said yellow or amber lights were exhibited, as required by the quoted applicable provisions of the Atlanta City Code (paragraph 40 (a) of the petition) and by the exercise of ordinary care (paragraph 40 (b) of the petition). Section 30.95 (b) of the Atlanta City Code of 1953, as amended, and of the Traffic Code of the City of Atlanta defines the meaning of the yellow caution light following the green or "go" signal as follows: "Vehicular traffic facing the signal is thereby warned that the red or 'Stop' signal will be exhibited immediately thereafter and such vehicular traffic shall not enter or be crossing the intersection *when the red or 'Stop' signal is exhibited.*" (Emphasis supplied.) The above provisions do not prohibit traffic from entering the intersection when the yellow or amber caution light is exhibited. The only requirement is that traffic not "enter or be crossing the intersection when the red or 'Stop' signal is exhibited." To construe the ordinance as absolutely requiring traffic not to enter an intersection on a caution signal would not only defeat the purpose of such a signal, i. e., to provide a short warning period during which traffic which is too close to the intersection to stop can clear the intersection, but would also necessitate very sudden stops and stopping of vehicles out into the intersections, both of which would be very dangerous. The only construction which can be sustained by logic and a proper reading of the ordinance is that a driver may enter an intersection with a caution signal if he is driving within the applicable speed limit at the time the caution signal is exhibited, if he cannot stop on the near side of the intersection without making such a sudden stop as to be dangerous and if he can so enter and still completely clear the intersection before the stop signal is exhibited. Therefore, an allegation merely that a driver entered an intersection when the caution light was exhibited does not, without more, amount

to either an allegation of negligence per se or any other type of negligence.

The demurrer, however, was not based upon the contention that paragraphs 40 (a) and (b) do not allege actionable negligence, but rather that the four paragraphs, read together, set out two conflicting factual situations, i.e., that the defendant driver entered the intersection on the *caution* signal (paragraphs 40 (a) and (b)) and on the *stop* signal (paragraphs 40 (c) and (d)). As has been indicated hereinabove, the allegations that the defendant "disobeyed" the caution light signals, which signals meant that he should not enter the intersection when they were displayed, construed against the pleader, amount to allegations that the *caution* lights were displayed at the time the defendant driver entered the intersection. Paragraphs 40 (c) and (d) of the petition, on the other hand, plainly allege that the *red* lights were exhibited facing the defendant as he entered the intersection. "Duplicity in pleading on the part of a plaintiff consists, not in asserting a right to and praying for relief inappropriate to the cause of action set forth in his petition, but in making therein equivocal statements with a view to getting the benefit of two or more inconsistent theories as to his right to recover, or in basing his complaint upon different versions with respect to the facts which gave rise thereto." *Orr v. Cooledge,* 117 Ga. 195 (3) (43 SE 527); *Hartley v. Hartley,* 198 Ga. 294 (31 SE2d 655); *Harris v. Rowe,* 200 Ga. 265, 269 (36 SE2d 787); *City of Atlanta v. Minder,* 83 Ga. App. 295 (63 SE2d 420). Since it is obvious that both factual situations alleged could not have existed at the same time, the defendant had the right to make the plaintiff amend his duplicitous petition so as to plainly show which of the two inconsistent factual situations is alleged to have existed and upon which theory recovery is sought or to set forth both theories in separate counts. The defective pleading might have been cured by amending it so as to allege to the effect that the caution light warned the defendant not to enter the intersection on the caution signal *unless he could completely clear the intersection before the red light came on.* The court therefore erred in overruling this special demurrer, which was the only one on which the plaintiffs in error insisted.

The harm allegedly resulting from the duplicity in the pleadings caused by paragraph 40 (b) of the petition was that the jury might have found that the defendant had violated the traffic signal ordinance merely by having *entered* the intersection against the yellow or amber caution light. As has been indicated hereinabove, the ordinance does not absolutely prohibit the entering of an intersection on a yellow light except when there is not sufficient time for the vehicle to completely clear the intersection before the red light comes on. If there was evidence that the defendant entered on the yellow light and that it turned to red before he could have cleared the intersection, this would authorize a finding of a violation of the *red* light, rather than of the *yellow* light. Therefore, the only evidence which could have made the pleadings harmful would be that which would authorize the finding that the defendant could have both *entered* and *cleared* the intersection while the yellow light was displayed. A thorough examination of the evidence, some of which is set out below, reveals an absence of any evidence to sustain such a finding; therefore, the error was rendered harmless.

The evidence is lengthy and conflicting as to the lights which were exhibited at the time of the collision. There was expert testimony that the Campbellton Road light remained green indefinitely until changed to yellow (or amber) then red by either a pedestrian control switch at the intersection or by one of the treadles located on Fairburn Road on both sides of Campbellton Road (the one over which the plaintiff passed being approximately 84 feet south of the center of the intersection). It was testified that the sequence of the lights facing both roads was red, green, yellow and red, with the yellow being on at the same time as the red on the intersecting road. No witness said that either party even entered on a yellow light. Both the plaintiff and the defendant testified as to having entered on a green light. Although the defendant's earlier testimony might have been understood to be that the last time he observed the light he was some distance back from the intersection, so that the light could have changed to yellow before he entered the intersection, he later maintained that he saw the green light as long as he could

see the signal up to the point of impact in the intersection. The plaintiff stated several times that he had entered on a green light. Although he also testified that when his light was green, the one for Campbellton Road was *amber*, this was a situation which was physically impossible under the normal sequence of the lights according to the expert testimony, unless there was a malfunction in the signals. The traffic engineer, Rose, testified that there was nothing in his records to indicate that the lights were malfunctioning at the time involved and that, even if there had been a malfunction, the sequence of the lights would not have been affected.

The testimony of the plaintiff's witness, Stone, an eyewitness of the collision, was confusing as to the lights to which he was referring. He testified that as soon as the vehicles hit he looked up to see what lights were on and saw the Fairburn Road light changing. He said, "The first thing I saw, I looked up and the Fairburn Road light was yellow and then *it* changed to green." If "it" refers to the Fairburn Road light, this again was impossible under the normal sequence of the lights. If "it" refers, however, to the Campbellton Road light, as is indicated by his testimony at another time—that the light was just changing to green in the truck's, or Campbellton Road's, favor—then the light would have had to be red for the defendant since the witness observed the light change *after* the collision and since red precedes green in the normal cycle.

Murner, the only other eyewitness, was leaning on a desk inside a service station on Campbellton Road about a half block east of the intersection when the collision occurred. By the time he went to the door and looked out, the defendant's vehicle had pushed the plaintiff's automobile the 92 feet from the intersection to the telephone pole and the plaintiff's automobile "had just started around the pole when I saw it, it was still in motion." He then looked at the light and saw that it was yellow for Campbellton Road, which would mean that that light was just completing its green phase. The plaintiff's automobile had automatically and immediately changed the Campbellton Road light to yellow when it ran over the Fairburn Road treadle. The yellow light on Campbellton Road normally burns for $3\frac{1}{2}$

seconds, according to the expert testimony. This treadle was situated 54 feet from the southern edge of the intersection and 84 feet from the center of the intersection, approximately where the collision occurred. After the collision, the defendant's vehicle pushed the plaintiff's automobile *sideways* for 92 feet eastward on Campbellton Road and into a telephone pole. In order for the jury to have found that the defendant had entered and cleared the yellow light on the same cycle as testified to by Murner, they must have found that, within the 3½ seconds duration of the yellow light for Campbellton Road, the following had transpired: the plaintiff's automobile traveled the 84 feet from the Fairburn Road treadle to approximately the center of the intersection, was struck by the defendant's truck and pushed sideways for 92 feet to the telephone pole, and the witness, who had been leaning on a desk inside the service station, had gone over to the door, opened it, observed the scene, then looked at the light. While one expert witness, Lucas, testified that, according to his calculations, the time required for the vehicles to reach the pole from the point of initial impact at the intersection was only 1.8 seconds, which would leave approximately 1.7 seconds for the plaintiff's vehicle to have traveled the 84 feet from the treadle to the intersection, this would have required a finding of the plaintiff's speed which was greatly in excess of that shown by all the testimony. The plaintiff testified that he paused at the intersection and looked before entering it on the green light, which would contradict a finding of such speed. Murner's testimony therefore did not authorize a finding that the defendant had entered and cleared the intersection during this particular yellow light phase. The only other possible construction of his testimony is that the yellow light he saw was in a cycle subsequent to the one during which the collision occurred. Since the yellow was preceded by green and the minimum "green time" for that light was 35 seconds, this would mean that at least 35 seconds, plus the minimum of 14 seconds of "green time" for Fairburn Road, must have elapsed since the previous Campbellton Road yellow light was on. This is inconsistent with his testimony that he saw the vehicles just as they were hitting the pole and the fact that it would not have

required the same 49 seconds for the vehicles to have reached that point from the point of impact in the intersection. Thus, this theory of his testimony likewise would not support a finding that the defendant could have entered and cleared the intersection with the yellow light.

The direct and positive testimony of the plaintiff and the defendant driver was in conflict, each saying that he entered on a green light. The indirect testimony of the two eyewitnesses, neither of whom was observing the lights at the actual moment of the collision, was ambiguous, apparently conflicting and, to some extent, perhaps impossible. The evidence, whether construed as a whole or according to each witness's testimony, was insufficient to authorize a finding that the defendant's vehicle might have entered and cleared the intersection on a yellow light had he not collided with the plaintiff's automobile.

■ Special grounds 1 and 2 object to the court's charge to the effect that the plaintiff would be entitled to recover by showing by the evidence that some one or more of the alleged acts of negligence was the proximate cause of the injury, whereas the allegations of paragraphs 40 (a) and (b) do not constitute actionable negligence. The legal sufficiency of the pleadings in the petition cannot be questioned in a motion for a new trial. *Grady County v. Banker*, 81 Ga. App. 701 (1) (59 SE2d 732); *Kelly v. Strouse*, 116 Ga. 872 (6) (43 SE 280); *Nixon v. Nixon*, 194 Ga. 301, 302 (21 SE2d 702); *Crews v. Flanders*, 101 Ga. App. 914, 918 (115 SE2d 628). Although a demurrer was filed to the pleadings in question, it was directed to the duplicitous nature of the pleadings and did not attack their legal sufficiency to allege actionable negligence (see the ruling in Division 1, hereinabove). The court therefore did not err in overruling special grounds 1 and 2.

■ Special grounds 3 and 4 assign error on the court's interrupting the cross examination by plaintiffs in error of a witness, John E. [M.] Stone, by asking the witness ten questions. It is complained that the following question called for a conclusion on the part of the witness: "Based upon the facts to which you have testified here this morning, can you tell this jury whether either of those vehicles ran the red light, and if

so, which one?" There is no prohibition against soliciting the opinion or conclusion of a witness as long as he has testified as to the facts upon which his conclusion is based. *Hardin v. Rubin,* 169 Ga. 608 (2) (151 SE 31); *Adams v. Adams,* 213 Ga. 875 (2) (102 SE2d 566); *Spradlin v. State,* 90 Ga. App. 97 (2) (82 SE2d 238); cases cited under *Code Ann.* § 38-1708, catchword "Facts." The witness had previously testified as to having been familiar with the intersection and the signal lights, having seen the collision and having observed the lights immediately thereafter. This was a sufficient basis for forming his conclusion as to which vehicle entered on the red light.

It is within the discretion of the trial court to question witnesses in order to ascertain the truth of the issue at hand so long as the manner in which the questions are propounded does not intimate or express any opinion concerning the issue. *Wilson v. State,* 94 Ga. App. 737 (2) (96 SE2d 281), and cit. The discretion of the trial court in controlling the right of cross examination will not be controlled unless plainly abused. *Fouraker v. State,* 4 Ga. App. 692 (3) (62 SE 116); *Rogers v. State,* 18 Ga. App. 332 (89 SE 460); *Western & Atlantic R. v. Burnett,* 79 Ga. App. 530 (54 SE2d 357), and cit. Prior to the court's questioning of the witness, the witness had given various testimony as to the color of the lights which was somewhat confusing and apparently contradictory. The court's questioning was an attempt to clarify the testimony and eliminate any apparent inconsistency therein and with the testimony of other witnesses. This was within the trial court's discretion and his questions, rather than indicating an opinion concerning the issue, were aimed at determining the witness's impartiality, means of knowing the facts to which he testified and the substance of his previous testimony, including his conclusions based thereon. The right of defendant's counsel to cross examine was in no way limited, since the witness was cross examined by them at some length both before and after the court's intervention. The court did not err in overruling special grounds 3 and 4.

■ Special ground 5 assigns error on the court's judgment overruling the plaintiffs in error's motion for a mistrial, based upon the following remarks made by counsel for the plaintiff

in his closing argument to the jury: "Mr. White: I consider each one of you gentlemen on this jury to be high class, fine men. Now I am not trying to throw any bouquets at anybody. The reason I say and the purpose of my saying what I have just said is this, there was a witness gotten in this case the night before last from South Fulton Hospital. I want Mr. Schmitt to know that I think it will not affect him one way or the other, and I just want him to know—I want to say that I can understand how these things operate like that and how these fellows operate like that and I don't appreciate that. But at the same time I want Mr. Schmitt to know that that sort of thing in this case— I can't help it but I know from looking at you men and the attention you have given in this case that every one of you will be honorable in your purposes and intention. This is a citizen of Fulton County, he lives in Newton Estates down in College Park. I live down below him, Red Oak, we both are South Fulton people. I have been practicing law for 35 years—36 now— this man is a clean man, it is too bad that he has to go through with what has to happen in this thing—they criticize me for not getting the expert witness until just last week. He cost money. We don't know until the last minute what we are going to do in one of these cases. I didn't—I criticized him for running out and getting a radiologist the night before, if you want to put it that way."

George J. Schmitt, one of the jurors, stated on voir dire that he was employed by South Fulton Hospital as Chief Engineer. Dr. James V. McNash, a radiologist called as an expert medical witness by the defendants, testified that he was employed as a radiologist at several hospitals and clinics, including South Fulton Hospital.

" 'Counsel should have ample latitude to argue what has transpired in a case from its inception to its conclusion, and the conduct of the party or his counsel with respect to the case is the subject of legitimate comment, and the range of such comment is necessarily in the discretion of the trial judge; and unless it can be shown that such discretion has been abused and some positive injury done by the remarks of counsel, the discretion of the trial judge will not be controlled.' *Adkins v.*

*Flagg,* 147 Ga. 136 (2a) (93 SE 92). See also *Purvis v. Atlanta Northern R. Co.,* 145 Ga. 517 (2), 519 (89 SE 571); *Georgia, Fla. & Ala. R. Co. v. Sasser,* 4 Ga. App. 276 (8) (61 SE 505)." *Dictograph Products v. Cooper,* 85 Ga. App. 421, 425 (69 SE2d 821). The above is true even though in strict law the party had the right to conduct his case in the particular manner attacked, and though the argument may be illogical, unreasonable, absurd, and make incorrect inferences and deductions, as long as the argument is based on matters which have transpired in the case. *Georgia, Fla. & Ala. R. Co. v. Sasser,* 4 Ga. App. 276, supra, p. 287; *Brooks v. State,* 55 Ga. App. 227, 231 (189 SE 852) and cit.; *Miller v. Coleman,* 213 Ga. 125, 129 (6) (97 SE2d 313). The fact that both the named juror and one of the witnesses for the defendants were employed by the same employer appeared from matters which had already transpired in the case and in the hearing of the jury, and was not a reference to extraneous matters dehors the record. As has been indicated, counsel for the plaintiff could, within the discretion of the trial judge, argue that the obtaining of such a witness was prejudicial whether his deduction was correct or not and even if counsel for the defendants had the legal right to introduce such witness. It has been held in other jurisdictions that it is improper for counsel to single out a particular juror, address him by name, and personally appeal to him (see 88 CJS 338, Trial, § 169) and such practice was disapproved by this court in the case of *Hudson v. State,* 26 Ga. App. 596, 600 (5) (107 SE 94). In the *Hudson* case, however, the remarks to the juror were based upon hearsay —a "rumor" heard by counsel—whereas, in the case at bar, the remarks were based on matters already legitimately appearing in the case and naming of the juror was necessary in order to point out the alleged prejudicial fact of the common employment. Although counsel for the plaintiff might have chosen the method of himself moving for a mistrial upon the introduction of the alleged prejudicial witness, his failure to do so did not, as a matter of law, bar his raising this fact in his closing argument. The court did not abuse its discretion in overruling the motion for a mistrial. Special ground 5 is without merit.

Special ground 6 assigns error on a charge of the court

which instructed the jury that the weight of expert opinion testimony is a question for the jury but which allegedly failed to so instruct them as to the weight of non-expert opinion testimony. In the second paragraph preceding the complained of charge, the court charged as follows: "Now you gentlemen are made the sole judges of the credibility of the witnesses *and the weight of the evidence given by them.* . ." This instruction was broad enough to include the weight of non-expert opinion testimony. The court did not err in overruling special ground 6.

The general grounds of the motion for a new trial are not insisted upon.

The court did not err in its judgment overruling the motion for a new trial as amended.

*Judgment affirmed. Jordan and Deen, JJ., concur.*