*Attorneys,* for appellee.

50194. J. A. C. et al. v. STATE OF GEORGIA.
50195. M. R. C. et al. v. STATE OF GEORGIA.

CLARK, Judge.

To what extent may a juvenile court judge direct and participate in the proceedings of a delinquency trial? That is the unique question presented by this appeal in which counsel representing four boys ruled delinquent for vandalism of school property objected to the trial "based upon the fact that there is no prosecutor in this court; that as a matter of law, the judge cannot act as both questioner and prosecutor and also as judge." (T. 26). Other enumerations question the validity of alleged confessions and sufficiency of the evidence in corroboration thereof.

1. What should be the role of the judge in juvenile court proceedings? The answer must depend upon recognition of the evolution in the concept of that important tribunal which has occurred in recent years. This history is dealt with effectively by Georgia Professor Samuel M. Davis in his recently published book, "Rights of Juveniles—The Juvenile Justice System." His first chapter entitled "Philosophy of the Juvenile Court" traces the change whereby the original parens patriae presentation of a non-adversary proceeding in which the judge was a father-figure has now been re-defined to provide for juveniles those constitutional due process standards peculiarly applicable to such courts. The professor's wise conclusion is that "Only by assuring a child of procedural fairness will a court that purports to represent that child's interests impart to him an unjaundiced view of a system of justice that is fair and benevolent." P. 5. This does not necessitate a conflict between the "father-figure" and the magistrate.

Essentially, there can be no objection where the judge conducts a trial with complete impartiality. This is true whether the defendant be an adult or juvenile. Thus, in *T. L. T. v. State of Ga.,* 133 Ga. App. 895 (212 SE2d 650) where the appellant argued that the cross examination of

witnesses constituted advocacy "and not an impartial magistrate," we applied the standards which the adjudicated cases had ruled appropriate to adults. We went on to say that "In the instance of a juvenile court judge it is most important that he exercise this right of cross examination so long as it does not constitute a manifest abuse of discretion nor go beyond the boundaries of becoming argumentative or expressing or intimating an opinion." P. 900.

We used the words "most important" in recognition of the uniqueness of the juvenile court jurist in the administration of justice.

"Basically, the [juvenile] judge has three primary obligations: (1) to protect the community, (2) to act in the best interest and welfare of the child appearing before him, and (3) to uphold the dignity of the law and the public's faith in the judicial system." 23 Juvenile Court Journal 8, 9 (1972). These three obligations can be performed in the absence of a prosecutor so long as the magistrate remains impartial. When, as, and if he departs from the requirement of neutral judiciousness and into advocacy he subjects himself to a reversal upon appeal.

Our examination of the transcript shows that the trial judge conducted the hearing in a fair and impartial manner. The record before us conforms to those standards which our court found to have existed in *Avakian v. State,* 53 Ga. App. 278 (2) (185 SE 383), "The examination of the witnesses by the court did not take such course as to become argumentative in its character; nor did the judge express or intimate an opinion as to what had or had not been proved, or as to the guilt of the accused; nor did the judge ask the questions of the witnesses in such a way as to tend to discredit the witnesses. For these reasons the questions propounded by the court furnish no cause for reversing the judgment." See also *A. K. Adams & Co. v. Homeyer,* 87 Ga. App. 301, 303 (2) (73 SE2d 581) and *Atlanta Stove Works v. Hollon,* 112 Ga. App. 862, 871 (146 SE2d 358).

2. We find no merit in the second enumeration which charges that the rights of the juveniles were violated because of the absence of any Miranda warnings. In making their investigation of the vandalism the police

officer visited the home of the parents of the four boys. After the officer had made known the purpose of his visit the fathers "decided to talk to the boys about it. So, they brought them into the living room and asked them several questions and talked with them." (T. 7). Under these circumstances, where there was no "custodial interrogation" and where the children were in the protective surroundings of their residence (not a frightening jail) in complete freedom and in the presence of their parents who participated in the interrogation, there was no requirement for Miranda warnings. See *Boorstine v. State,* 126 Ga. App. 90, 91 (1) (190 SE2d 83); *Ingle v. State,* 123 Ga. App. 56 (1) (179 SE2d 305).

The facts here differentiate this case from *Freeman v. Wilcox,* 119 Ga. App. 325 (167 SE2d 163) relied on by appellants. There the juvenile was taken from school as a suspect and detained in a youth center for five days until he confessed to a detective.

3. The remaining enumerations contend that even if the admissions of wrongdoing by the boys were valid that there is an absence of corroborating evidence as required by Code § 24A-2002 (b) and that the evidence is not sufficient to the court to find "beyond a reasonable doubt" as stated in Code § 24A-2201 (b) that they had committed the acts. We think there is sufficient corroboration from the witnesses who saw the boys at the school that Saturday morning. We are also satisfied the proof meets the reasonable doubt test.

*Judgment affirmed. Pannell, P. J., and Quillian, J., concur.*

ARGUED FEBRUARY 4, 1975 — DECIDED APRIL 16, 1975.

*Driebe & McAllister, J. Dunham McAllister,* for appellants.

*William H. Ison, District Attorney, Douglas M. Peters, Assistant District Attorney,* for appellee.